**FIRST ASSEMBLY OF GOD OF NAPLES, FLORIDA, INC., et al., Plaintiffs,**

v.

**COLLIER COUNTY, etc., et al., Defendants.**

No. 91–211 Civ–FtM–10(D).

United States District Court,
M.D. Florida,
Fort Myers Division.

Oct. 4, 1991.

Frederick Charles Kramer, Jr., Marco Island, Fla., John William McKay, Tampa, Fla., Michael R.N. McDonnell, Naples, Fla., for plaintiffs.

Gregory W. Hootman, Sarasota, Fla., William Edward Powers, Jr., Tallahassee, Fla., for defendants.

## ORDER

HODGES, District Judge.

This is an action for declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, brought by a church and residents of a homeless shelter at the church against Collier County, Florida and the Sheriff of Collier County. The Defendants have charged the church-operated homeless shelter with violations of several county zoning regulations and have ordered the church to close the shelter. Plaintiffs allege that the zoning regulations were enacted in contravention of state law and that their Constitutional right to procedural due process was violated. Plaintiffs also allege that the Defendants' actions have violated the church's First Amendment right to free exercise of religion.

Plaintiffs' previous motions for a temporary restraining order and for a preliminary injunction were denied by Order entered August 15, 1991. Plaintiffs renewed their motion for a preliminary injunction and a hearing was conducted on the motion on September 19, 1991. Having considered the parties' briefs and their oral argument, the Court finds that the requested preliminary injunction should not issue because the Plaintiffs have failed to demonstrate a substantial likelihood of ultimate success on the merits of their claims.

*Background*

Plaintiff First Assembly of God of Naples, Florida, Inc. ("First Assembly") operates a homeless shelter on the grounds of its church. The church is located on a six acre parcel of land in Collier County, Florida in an area which is zoned RMF–6, for multi-family residential use. On November 15, 1983 First Assembly was granted a provisional use permit by the Collier County Board of Zoning Appeals to operate a church on the property. Collier County Zoning Ordinance 82–2, in effect at that time, defined a church as "a building used as a place of worship and religious education, and for customary accessory uses, by a body or organization of religious believers."

In November, 1990, First Assembly opened a shelter for the homeless on its property. The shelter was located in a building that had previously been used as a clubhouse and a day care center.[1] The complaint states that the shelter has, at times, housed a maximum of twenty eight people.

In April, 1991, a county official charged that maintenance of the shelter constituted a zoning violation. The county Code Enforcement Board ("CEB") held five hearings on the matter and issued a written determination on August 12, 1991 that First Assembly was in violation of several zoning ordinances. The CEB found that the shelter was not a "customary accessory use" of the church property and that the applicable zoning and housing codes did not permit the premises to be used for housing the number of people residing at the shelter. The CEB further found that First Assembly had not applied for a provisional use permit to maintain a homeless shelter on its premises. First Assembly was required to correct the violations by closing the shelter within three days or pay a fine of over $250 per day that the shelter remained open thereafter.

The shelter has now been closed. Plaintiffs assert that the mortgage holder on the church property threatened to foreclose on the mortgage if a lien was placed on the property by the county to recover any fines levied by the CEB. Plaintiffs' motion re-

---

**1.** First Assembly was initially charged with violation of the county building code for failing to obtain the necessary permits prior to renovation of the structure, and Plaintiffs challenged the validity of that code in their complaint. Counsel for the Plaintiffs stated at the hearing that the building code dispute has been resolved.

quests the Court to enjoin the Defendants from enforcement of the zoning ordinances.

*Preliminary Injunction Standard*

A movant for a temporary restraining order or preliminary injunction must show: (1) a substantial likelihood that he will eventually prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.1985) (citation omitted). Moreover, "[t]he preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *Zardui–Quintana,* at 1216.

Plaintiffs have alleged two distinct theories of relief: (1) that the zoning ordinances violate the Plaintiffs' First Amendment right to free exercise of religion, and (2) that the zoning ordinances are void as violative of the Plaintiffs' Fourteenth Amendment right to procedural due process. Although these theories are entirely separate from one another, the parties have frequently blurred the distinction between them in their briefs and oral argument.[2] Each theory will be discussed separately.

*Free Exercise of Religion*

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." The First Amendment applies to state and local governments through the due process clause of the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). However, it is "clear that a state may by general and non-discriminatory legislation ... safeguard the peace, good order and comfort of the community, without unconstitutionally invading the liberties protected by the [First and] Fourteenth Amendment[s]." *Id.* 310 U.S. at 304, 60 S.Ct. at 903. It is the balancing of these two competing interests which the Court must undertake in this case should the Plaintiffs pursue this claim to a final determination. The Court is aided in this task by an Eleventh Circuit decision which contains an exhaustive review of Supreme Court case law on the subject and provides the rule of decision in this case. *Grosz v. Miami Beach,* 721 F.2d 729 (11th Cir.1983), *cert. denied,* 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984).

The plaintiff in *Grosz,* Rabbi Naftali Grosz, was the elderly leader of an orthodox Jewish sect who wished to conduct religious services at his home. The plaintiff's religion required the presence of at least ten adult males in order to conduct prayer services. Initially the plaintiff conducted services in his home, but he later moved the services to a detached garage on his premises which he remodeled into a small synagogue with seats for 30 people and all of the necessary accoutrements for holding prayer services. As word spread of the new synagogue, visitors from out of town began using the facility for worship, sometimes asking residents for directions to the "Grosz shul (synagogue)." During the winter months, as many as 50 people would sometimes attend services at the Grosz home. *Id.* at 731–732.

Miami Beach zoning ordinances prohibited the establishment of churches or synagogues in single family residential zones, where the Grosz home was situated. The plaintiffs in Grosz were specifically notified by the city when they received a building permit for remodeling the garage that the structure could not be used as a religious institution. Numerous other residential zones in the city, constituting at least 50% of the entire city territory, specifically permitted property within those zones to be

**2.** It should also be observed that the Plaintiffs do not occupy precisely the same posture with respect to these constitutional claims; and, as between them, the church itself would seem to have the strongest position. The analysis that follows, therefore, focuses primarily upon the position of the church.

used for houses of worship. One such zone was within four blocks of the Grosz residence. Following complaints from neighbors, the city of Miami Beach notified Grosz that the synagogue was a violation of the zoning ordinances and threatened him with prosecution for a misdemeanor offense. *Id.*

The Court in *Grosz* established a three part test to be applied when a statute is challenged as violative of the free exercise clause. The statute or ordinance must pass two threshold tests and then a balancing test is conducted in which the government's interest is weighed against the religious interest. *Id.* at 733.

■ The first threshold test requires an examination of the challenged government action to determine whether it regulates religious beliefs and opinions or whether it regulates religious conduct. *Id.* The government may not restrict the freedom to hold religious beliefs or opinions, for that freedom is absolute. *Braunfeld v. Brown*, 366 U.S. 599, 603, 81 S.Ct. 1144, 1146, 6 L.Ed.2d 563 (1961). If the regulation restricts religious conduct it passes this first test because, "the freedom to act, even when the action is in accord with one's religious convictions, is not totally free from legislative restrictions." *Id.*

■ The second threshold test requires that the challenged government action have both a secular purpose and a secular effect. That is, the action may not be based upon disagreement with religious tenets or practices, or be aimed at impeding religion. Further, the regulation may not have as its "essential effect" a negative influence on the pursuit of religious activity or the expression of religious belief. *Grosz*, at 733.

■ The *Grosz* court quickly satisfied the two threshold inquiries and the same may be done here. Because the zoning ordinance as applied in this case regulates housing the homeless on church property, not one's belief in doing so, it involves conduct. Further, as stated in *Grosz*, zoning ordinances of general application are not aimed at impeding religion and, "given

zoning's historical function in protecting public health and welfare, and the incidental nature of the asserted burden on religion, the essential effect of zoning laws is clearly secular." *Id.* at 738, *citing Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). Plaintiffs state in a conclusory fashion that the zoning ordinance does not pass the threshold tests. Plaintiffs offer no factual basis or legal argument to support this assertion and the Court can find none.

■ The *Grosz* balancing test compares the burden on the government (of altering its activity) with the burden on religion by requiring Plaintiffs' compliance with the challenged ordinance. *Grosz*, at 734. The balancing test is more amorphous than the threshold inquiries. The *Grosz* court was guided by the principles espoused in several Supreme Court decisions, but none laid down specific guidelines for dealing with the particular situation presented in *Grosz*. *Id.* Fortunately, the facts in *Grosz* are sufficiently similar to this case that the Court may derive more specific guidance from the teachings of *Grosz*.

In *Grosz*, the court held that preservation of government's ability to regulate zoning is "a significant governmental objective." *Id.* at 738. The Defendants argue in their moving papers that the issuance of the requested injunction would preclude the county from enforcing its zoning, building and housing codes, thus presenting the identical significant governmental objective. *Grosz* also held, however, that the court must consider the impact of a religious based exception to the zoning ordinance. *Id.* It found that "granting an exception would defeat City zoning policy in all neighborhoods where that exception was asserted." *Id.*

The zoning interest at issue in *Grosz* involved the crowds generated in the residential neighborhood by the existence of a place of worship. Here, the issue is the number of persons housed in the shelter. The shelter apparently provides more than temporary protection from the elements on a night-by-night basis; rather, homeless persons who are served by the facility are

called "residents" by the church in its rules for the shelter and in its moving papers. One of the individual Plaintiffs alleges that he is irreparably harmed by the closing of the shelter because he needs to have a "permanent residence" address to supply to his parole officer. Residents of the shelter are permitted to leave their belongings at the shelter during the day. They pay a fee of $3 per night and the duration of their stay at the facility is not limited.

When asked at the hearing how the shelter differed from a rooming house or apartment house, counsel for the Plaintiffs was unable to articulate a meaningful distinction. The imposition of a religious based exception, therefore, would effectively prevent the county from enforcement of the zoning code. The county would have to permit any rooming house or apartment-like, non-conforming use of property if a religious interest was asserted. The *Grosz* court concluded, as must be concluded here, that: "Together, the important objectives underlying zoning and the degree of infringement of those objectives caused by allowing the religious conduct to continue place a heavy weight on the government's side of the balancing scale." *Grosz* at 739.

In *Grosz*, the court also weighed the zoning restriction's burden on religion by examining the importance of the prohibited activity to the practice of the particular religion. After hearing evidence presented by the plaintiffs, the *Grosz* court determined that, because the plaintiffs' religion required the presence of ten adult males and the city's complaints were based upon the congregation of significantly larger groups, the prohibited activity was "nonessential." *Id.* Further, the court held that because the city only limited the activity in geographic terms and many other suitable locations existed nearby, the burden imposed on religion was less weighty than the burden on government. *Id.*

Plaintiffs have provided little indication of the significance to their religion of the practice of housing the homeless. Their moving papers state:

> Plaintiff Church maintains that The Shelter is a ministry of the Church. The tenets of the faith of the First Assembly mandate that the church practice acts of benevolence. The shelter is operated as an integral part of the church.

Defendants point out that First Assembly operated the church for eight years but did not open the shelter until November, 1990, suggesting that it is not an essential part of Plaintiffs' religious practices. Defendants also note that church operated homeless shelters exist throughout the county in areas that are zoned differently. Presumably, Plaintiffs would be permitted to operate a shelter in those areas. Also, Plaintiffs' state their religious tenets generally as including acts of benevolence, but they note no specific requirement of having a homeless shelter on the grounds of their church.

Even so, the Court does not presume to make a determination as to the religious significance to the Plaintiffs of maintaining the shelter. It is enough to observe as stated in *Grosz*, "The burden imposed, though, does not rise to the level of criminal liability, loss of livelihood, or denial of a basic income sustaining public welfare benefit. In comparison to the religious infringements analyzed in previous free exercise cases the burden here stands towards the lower end of the spectrum." *Grosz*, at 739.

It is also noteworthy that this case differs from the facts in *Grosz*, to Plaintiffs' disadvantage, because the religious practice regulated by the government here is somewhat removed from the central religious activity of prayer. A claim such as the one brought by Plaintiffs was anticipated in a recent law review article:

> One area in which the regulation of religious action has occurred involves uses not devoted directly to prayer. Most frequently, this type of regulation involves the operation of a church as a religious school or the use of a church for some type of communal living. These situations often involve the free exercise clause because churches claim that such uses are an integral part of their operations or, indeed, of their beliefs. However, because these uses are

frequently further from the direct idea of religious expression, courts are more likely to uphold reasonable regulation. This is in the context, of course, of Supreme Court decisions allowing persons with religious beliefs to define what constitutes their religion. Nonetheless, when such beliefs are expressed as action, the courts are more willing to subject such activities to time, place and manner regulations.

Kenneth Pearlman, *Zoning and the Location of Religious Establishments*, 31 Cath. Law. 314, n. 119 and accompanying text (1988).

The only decision within the Eleventh Circuit in which a zoning ordinance was invalidated under the free exercise clause is easily distinguished from this case. *Church of Jesus Christ of Latter–Day Saints v. Jefferson County*, 741 F.Supp. 1522 (N.D.Ala.1990). In *Jefferson*, a church purchased a twelve acre parcel of land in a residential community and sought a rezoning to permit the church to move its facilities there. The Church's request was denied because of neighborhood opposition, and there was no other suitably zoned land available within the jurisdiction. Applying the *Grosz* test, Judge Propst held that because there was no other suitable land available and because the rezoning process was subject to neighborhood whim, the burden imposed upon religion outweighed the cost to government of non-compliance with the ordinance. *Id.*

There are significant differences between *Jefferson* and this case. Most importantly, as in *Grosz*, there is a substantial amount of land within the county where Plaintiffs could operate a homeless shelter in compliance with zoning regulations. Also, there is no indication that the Collier County zoning enforcement procedures are based upon subjective considerations or neighborhood pressure.

*Procedural Due Process*

■ Plaintiffs allege that the comprehensive zoning ordinances which established the zoning regulations and housing code for Collier County were not enacted in compliance with state law and therefore violated their right to procedural due process as guaranteed by the Fourteenth Amendment. Plaintiffs do not allege that the decision of the CEB requiring them to close the shelter failed to accord procedural due process to them.

Zoning Ordinance 82–2, enacted in 1982, established zoning regulations for all unincorporated areas in the county. This ordinance defined a church as a place of worship including all "customary and accessory uses." The CEB found that Plaintiffs' homeless shelter was not a customary and accessory use for a church. Plaintiffs allege that in enacting Ordinance 82–2 the county did not comply with several of the technical requirements of Fla.Stat. § 125.-66. Plaintiffs claim that the published notice of the hearing on the ordinance was less than ¼ page in size, did not include a geographic location map and did not have a headline in 18 point type. Plaintiffs do not assert that the ordinance was enacted without any notice or hearing.

Zoning Ordinance 89–06, enacted in 1989, established a housing code for unincorporated Collier County and designated a housing official to oversee enforcement of that code. Plaintiffs allege infirmities in the enactment of Ordinance 89–06 similar to those alleged with respect to Ordinance 82–2. Plaintiffs also allege that the county violated Fla.Stat. § 125.68 by failing to codify any of their ordinances.

■ To establish a procedural due process violation, Plaintiffs must show, first, that they had a liberty or property interest which was interfered with by the state, and second, that the state failed to use constitutionally sufficient procedures in depriving Plaintiffs of that right. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). Plaintiffs correctly argue that the initial determination of whether they have a protectable property interest is governed by state law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). However, the constitutionality of the procedures used by the state in depriving the Plaintiffs of a protected right does

not turn on the procedures mandated by state law:

> Even if the notice in this case is insufficient to satisfy the state statute, the state statute does not define the process due under the federal Constitution. Therefore, even if the state statute has been violated, that does not prove a violation of a federal constitutional right. [Plaintiffs] must show not just a violation of a state statute, but a constitutional violation in this section 1983 action.... [W]e emphasize that the violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution. If otherwise, federal courts would have the task of insuring strict compliance with state procedural regulations and statutes.

*Harris v. Birmingham Board of Education,* 817 F.2d 1525, 1527–1528 (11th Cir. 1987).

■ It is clear under Florida law that an action by a zoning authority which alters the manner in which a property owner may use its land is a protected property interest to which procedural due process attaches. *See Gulf & Eastern Development Corporation v. Fort Lauderdale,* 354 So.2d 57, 59 (Fla.1978). What Plaintiffs have not made clear, however, is that the process afforded them in the enactment of the challenged zoning ordinances was insufficient under the federal Constitution. Plaintiffs argue only that the procedure used in enacting the zoning ordinances violated state law.

At a minimum, the due process clause requires that persons deprived of life, liberty or property be afforded notice and an opportunity to be heard. *Armstrong v. Manzo,* 380 U.S. 545, 549, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Plaintiffs admit that an advertised public hearing was held prior to the enactment of the zoning ordinances. Therefore, they were afforded notice and an opportunity to be heard. That this notice did not comply with state law requirements is not constitutionally significant. *See Harris,* at 1527. Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their procedural due process claim.

*State Law Claims*

■ Plaintiffs' only remaining claims are that the zoning ordinances are void for failure to comply with Florida Statutes §§ 125.66 and 125.68. That issue is beyond the subject matter jurisdiction of this Court absent the exercise of pendant jurisdiction. 28 U.S.C. §§ 1331 and 1332. The decision to exercise pendant jurisdiction over a claim is within the discretion of the Court, but "such needless decisions of state law are to be avoided." *Grant v. County of Seminole,* 817 F.2d 731, 732 (11th Cir. 1987), *citing Moor v. County of Alameda,* 411 U.S. 693, 715–717, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973) *and United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Plaintiffs' state law claims are, therefore, due to be dismissed for lack of subject matter jurisdiction and, if Plaintiffs wish to pursue prosecution of those claims, they should be directed to the state courts.

Accordingly, upon due consideration, it is ORDERED that:

(1) Plaintiffs' motion for a preliminary injunction (Doc. #11) is DENIED;

(2) All claims in the complaint seeking to declare the zoning ordinances null and void for violation of state law are hereby DISMISSED without prejudice for lack of subject matter jurisdiction;

(3) The Court notes that the Defendants have moved to dismiss the complaint; and, given the reasons stated and the result reached in this order, it appears that summary judgment in favor of the Defendants with respect to Plaintiffs' federal constitutional claims may be appropriate. See Rule 12(b), F.R.Civ.P. Accordingly, the parties are directed to show cause by written response filed within fifteen (15) days from the date of this order why summary judgment should not be entered.

Any response opposing summary judgment should specifically identify in numbered, single sentence paragraphs, those material issues of fact or law which remain

unresolved and which preclude such disposition of the case.

IT IS SO ORDERED.

DONE and ORDERED.