20 F.3d 419
 62 USLW 2708
 FIRST ASSEMBLY OF GOD OF NAPLES, FLORIDA, INC., Plaintiff-Appellant,
Deborah Lynn Cook, John Michael Webber, Toby Westfall, Etc.,
Brian Knies, Etc., David Reed, Etc., et al., Plaintiffs,
v.
COLLIER COUNTY, FLORIDA, Don Hunter, as Sheriff of Collier
County, Florida, Defendants-Appellees.
 No. 93-2399.
 United States Court of Appeals, Eleventh Circuit.
 May 5, 1994.
Opinion Modified to add footnote 5, 27 F.3d 526.
 
 Mark R. Dolan, Largo, FL, for appellant.
 Maynard W. Schryver, Naples, FL, for appellees, and Collier County.
 Gregory W. Hootman, Cindy R. Galen, Elinor E. Erben, Sarasota, FL, for Collier County.
 Appeal from the United States District Court for the Middle District of Florida.
 Before COX and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.
 DUBINA, Circuit Judge:
 
 
 1
 First Assembly of God ("First Assembly") appeals from the district court's grant of summary judgment in favor of Collier County, Florida ("the County"). Specifically, First Assembly claims that the enactment of a local zoning ordinance violated its rights to procedural due process and free exercise of religion. We hold that the County's zoning laws did not violate First Assembly's constitutional rights of due process or free exercise of religion; therefore, we affirm the district court's grant of summary judgment for the County.
 
 I. FACTS
 
 2
 First Assembly is a Christian church affiliated with the Assemblies of God of the United States, and located in Naples, Florida. First Assembly was established in 1956 when unincorporated Collier County imposed no zoning ordinances. In 1982, Collier County adopted Zoning Ordinance 82-2, which imposed zoning regulation on all of the unincorporated County. Pursuant to Ordinance 82-2, First Assembly was zoned RMF-6. An RMF-6 district is a multi-family residential district that also permits a number of community uses, including churches and their "customary accessory uses."
 
 
 3
 In 1985, First Assembly decided to build a new structure on its property, and received permission for the construction. The new building was primarily used as a day care center. In 1989, due to community need, First Assembly converted the building into a homeless shelter. Subsequently, the people of Naples became concerned about the problem of the homeless in their community. The record indicates that homeless people had taken up residence in vacant lots, where the living conditions were unsanitary. As a result, there was great community distress over both health and safety concerns. First Assembly's shelter was, no doubt, seen as part of the problem.
 
 
 4
 In April of 1991, a county official charged that First Assembly's homeless shelter violated several zoning ordinances. These alleged violations of the local zoning ordinances were adjudicated by the Collier County Code Enforcement Board ("CEB"). The CEB held five hearings on the matter and ultimately concluded that First Assembly was operating its homeless shelter in violation of several zoning ordinances. The CEB determined that the shelter was not a "customary accessory use" of the church and that the applicable housing and zoning codes did not permit the shelter space to be used as a residence for such a large number of people. In addition, the CEB found that First Assembly had not applied for a provisional permit to maintain a homeless shelter on its premises. Thus, First Assembly was required to close the shelter within three days, or pay a fine of $250 per day for each day that the shelter remained open. The shelter is now closed.
 
 II. PROCEDURAL HISTORY
 
 5
 First Assembly, the individual plaintiffs, and the class representatives brought suit against Collier County. Asserting irreparable harm attendant to the loss of the shelter, the plaintiffs sought an ex parte temporary restraining order and a preliminary injunction, as well as permanent injunctive relief.
 
 
 6
 The temporary restraining order and preliminary injunction were denied, and a renewed motion for a temporary restraining order was filed. The district court held a non-evidentiary hearing and denied the motion. In addition, the court converted the County's motion to dismiss into a motion for summary judgment and ordered First Assembly to show cause why judgment for the defendants should not issue.
 
 
 7
 The district court held a hearing on the motion for summary judgment; it then assigned the case to a magistrate judge, who issued a report and recommendation. The district court adopted the magistrate judge's report and recommendation and granted summary judgment for the County. First Assembly then perfected this appeal.
 
 III. STANDARD OF REVIEW
 
 8
 A district court's grant of summary judgment is an issue of law to be reviewed de novo. RJR Nabisco, Inc. v. United States, 955 F.2d 1457, 1459 (11th Cir.1992). "The 'purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Wouters v. Martin County, Fla., 9 F.3d 924, 928 (11th Cir.1993), quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law. Id.
 
 IV. DISCUSSION
 A. Procedural Due Process
 
 9
 First Assembly contends that it was denied procedural due process in the enactment of the zoning laws and in the County's failure to codify those laws annually as required under Florida law.[1] Sec. 125.66 Fla.Stat.;[2] Sec. 125.68 Fla.Stat.[3] First Assembly's argument is not persuasive; while the County's actions may constitute violations of state law, it does not follow that such violations implicate the federal Constitution.
 
 
 10
 Construing the facts in the light most favorable to the non-movant, one can assume that the County did not follow proper procedures both in passing the ordinances and in subsequently failing to codify them. Thus, the central focus of our inquiry must be whether such a procedural failure rises to the level of a federal constitutional violation. The district court discussed this precise issue in its order denying the motion for a preliminary injunction. First Assembly of God v. Collier County, 775 F.Supp. 383, 388 (M.D.Fla.1991) (Hodges, J.). The district court's analysis in that opinion is sound, and is accordingly adopted by this court. The district court first noted that in order to demonstrate a violation of procedural due process, First Assembly must show: (1) that it has a liberty or property interest that was interfered with by the state; and (2) that the state failed to use "constitutionally sufficient procedures" in interfering with that interest. Id.
 
 
 11
 Whether First Assembly has a protectable property interest is a matter of state law. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Under Florida law, procedural due process attaches to zoning actions which alter the manner in which a property owner can use his or her land. First Assembly, 775 F.Supp. at 389; Gulf & Eastern Development Corporation v. City of Fort Lauderdale, 354 So.2d 57, 59 (Fla.1978). Thus, First Assembly has met the first prong of the procedural due process analysis.
 
 
 12
 However, it is in the second prong of the analysis where First Assembly comes up short:
 
 
 13
 What [First Assembly has] not made clear, however, is that the process afforded them in the enactment of the challenged zoning ordinances was insufficient under the federal Constitution. [First Assembly] argue[s] only that the procedure used in enacting the zoning ordinances violated state law.
 
 
 14
 First Assembly, 775 F.Supp. at 389 (emphasis added). Significantly, the violation of a state statute mandating procedure is not the equivalent of a federal Constitutional violation.
 
 
 15
 Even if the notice in this case is insufficient to satisfy the state statute, the state statute does not define the process due under the federal Constitution. Therefore, even if the state statute has been violated, that does not prove a violation of a federal constitutional right.... [W]e emphasize that the violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal Constitution. If otherwise, federal courts would have the task of insuring strict compliance with state procedural regulations and statutes.
 
 
 16
 Harris v. Birmingham Board of Education, 817 F.2d 1525, 1527-1528 (11th Cir.1987) (citation omitted). Thus, First Assembly must show a federal constitutional violation in order to survive summary judgment.
 
 
 17
 Due process requires that persons deprived of a right must be afforded notice and an opportunity to be heard. Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990); Goss v. Lopez, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (At a minimum, due process requires "some kind of notice and ... some kind of hearing." (emphasis in original)). Here, First Assembly does not dispute that some notice was given, nor does it dispute that a public hearing was held. Rather, First Assembly argues that the fact that the published notice was less than 1/4 page in size, did not include a geographic location map, and did not have a headline in 18 point type proves that it was denied sufficient notice under the Constitution. Given that First Assembly was provided notice and an opportunity to be heard, we hold that the deficiencies in notice alleged in this case do not rise to the level of a federal constitutional violation. Therefore, because First Assembly cannot show a violation of procedural due process, the district court was correct in entering summary judgment for the County on this issue.
 
 B. Free Exercise Clause
 
 18
 First Assembly contends that the enforcement of Naples' zoning ordinances violates the Free Exercise Clause of the First Amendment because it prevents the church from practicing its religion. First Assembly claims that sheltering the homeless is an essential aspect of the Christian religion; thus, the forced closing of the homeless shelter interferes with First Assembly's free exercise of religion.
 
 
 19
 The most recent Supreme Court case interpreting the Free Exercise Clause is Church of the Lukumi Babalu Aye v. City of Hialeah, --- U.S. ----, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). In that case, the Court held that a local law targeting the use of animal sacrifice for religious purposes violated the Free Exercise Clause. In so holding, the Court reversed this court which had affirmed the district court's upholding of the local ordinance. Church of the Lukumi Babalu Aye v. City of Hialeah, 723 F.Supp. 1467 (S.D.Fla.1989), aff'd, 936 F.2d 586 (11th Cir.1991).
 
 
 20
 The Supreme Court explained that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." Id., --- U.S. at ----, 113 S.Ct. at 2226. A law that does not meet these requirements, however, must be justified by a compelling state interest and must be narrowly tailored to meet that interest. Id. Thus, the threshold questions in analyzing a law challenged under the Free Exercise Clause are (1) is the law neutral, and (2) is the law of general applicability?
 
 
 21
 The Court applied these requirements in Hialeah, and determined that the ordinances, which were enacted only when the community realized that the Santerians were planning to build a church in their community, and which explicitly targeted the religious conduct of animal sacrifice, were not neutral. In addition, the Court found that the laws were not of general applicability, but rather applied "only against conduct motivated by religious belief." Id., --- U.S. at ----, 113 S.Ct. at 2233. Therefore, the ordinance at issue in Hialeah had to endure strict scrutiny--an obstacle it could not overcome.
 
 
 22
 First Assembly relies on Hialeah, in the mistaken belief that the present case is analogous. Clearly, the present case is distinguishable from Hialeah. Even if it is assumed for the sake of argument that sheltering the homeless is a central, essential element of the Christian religion, the fact still remains that the Naples ordinances are neutral and of general applicability. The first zoning ordinance, 82-2, simply does not implicate the Free Exercise Clause. This ordinance, as passed, zones an entire residential area and makes a special exception for churches. It is neutral on its face and is of general applicability. Thus, it is only the second ordinance, 91-34, which is really in question here.
 
 
 23
 Ordinance 91-34 was passed subsequent to the opening of the shelter, amid much consternation over the problem of the homeless in the Naples community. This ordinance identifies a homeless shelter as a group home and provides regulations for its operation. The ordinance is also facially neutral--it applies to any homeless shelter, regardless of who operates it. More importantly, Naples has not prohibited the operation of homeless shelters. On the contrary, it has defined areas in which the shelters may operate and provided regulations for such. These regulations apply to all group homes, once again regardless of their ownership or affiliation, and were motivated by wholly secular concerns. The intent of the ordinance was not to inhibit or oppress any religion; rather, the Commission was motivated to address a general problem of health and safety concerns. The fact that First Assembly was affected was incidental. Thus, this ordinance is of general applicability.
 
 
 24
 Another case which aids our analysis is this court's decision in Grosz v. City of Miami Beach, Fla., 721 F.2d 729 (11th Cir.1983), cert. denied, 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984).[4] Grosz is particularly helpful in this case because it is so closely analogous. The plaintiff in Grosz was a Jewish Rabbi who began conducting orthodox worship services at his home. His religion required that at least ten adult males be present at the ceremony. Word spread of the services, and sometimes as many as fifty people would worship in his remodeled garage. Id. at 731-732. Unfortunately, these services were in violation of Miami Beach zoning ordinances. Following complaints from neighbors, the city notified Grosz that he was in violation of the zoning laws. Id.
 
 
 25
 In deciding that the zoning laws did not violate Grosz's right to free exercise of religion, this court established a three part test. First, the government regulation must regulate religious conduct, not belief. Second, the law must have a secular purpose and a secular effect. Third, once these two thresholds are crossed, the court engages in a balancing of competing governmental and religious interests. Id. at 733. In Grosz, as in the instant case, the two thresholds are easily met. The focus is thus on the balancing of interests.
 
 
 26
 In balancing those interests in Grosz, this court explained:
 
 
 27
 On the free exercise side of the balance weighs the burden that Appellees bear of conducting their services in compliance with applicable zoning restrictions or relocating in a suitably zoned district. Countering on the government's side is the substantial infringement of the City's zoning policy that would occur were the conduct allowed to continue.... [T]he relative weights of the burdens favor the government.
 
 
 28
 Id. at 741. The same could be said for the present case. The burden on First Assembly to either conform its shelter to the zoning laws, or to move the shelter to an appropriately zoned area, is less than the burden on the County were it to be forced to allow the zoning violation. Thus, under the Grosz test, First Assembly's right to free exercise of religion is not violated by the County's zoning ordinances.
 
 
 29
 The Naples ordinances pass the threshold tests under the Supreme Court's Free Exercise Clause analysis, as well as this court's test as articulated in the Grosz case. Thus, the district court did not err in granting summary judgment in favor of the County on this issue.
 
 V. CONCLUSION
 
 30
 The district court did not err in granting summary judgment in favor of the County. The breach of state procedure did not rise to the level of a federal due process violation, and the imposition of the zoning laws did not violate First Assembly's rights under the Free Exercise Clause of the First Amendment.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 First Assembly argues at the outset that because the procedure required by state law for the enactment of the zoning laws was not strictly followed, the ordinances are in fact void. Then, in its Reply Brief, it retreats from this argument, stating that it merely asserted the invalidity argument in order to illustrate the importance of the strict enactment procedures. Were First Assembly actually challenging the legitimacy of the zoning ordinances it might prevail, because it does appear that the enactment procedures were not strictly followed. However, this is not First Assembly's contention. Rather, First Assembly argues that the ordinances as enacted, and the failure of the County to annually codify the ordinances, constitutes a denial of federal due process under the law
 
 
 [2]
 Section 125.66 Fla.Stat. provides in pertinent part:
 (1) In exercising the ordinance-making powers conferred by ... the State Constitution, counties shall adhere to the procedures prescribed herein.
 (5)(b) In cases in which the proposed rezoning involves 5 percent or more of the total land area of the county, the board of county commissioners shall provide for public notice and hearings as follows:
 (1) The board of county commissioners shall hold two advertised public hearings on the proposed ordinance or resolution. Both hearings shall be held after 5 p.m. on a weekday, and the first shall be held approximately 7 days after the day that the first advertisement is published. The second hearing shall be held approximately 2 weeks after the first hearing and shall be advertised approximately 5 days prior to the public hearing. The day, time, and place at which the second public hearing will be held shall be announced at the first public hearing.
 (2) The required advertisements shall be no less than one-quarter page in a standard size or a tabloid size newspaper, and the headline in the advertisement shall be in a type no smaller than 18 point. The advertisement shall not be placed in that portion of the newspaper where legal notices and classified advertisements appear....
 
 
 [3]
 Section 125.68 Fla.Stat. provides in pertinent part:
 (1) Counties shall maintain a current codification of all ordinances. Such codification shall be published annually by the board of county commissioners.
 
 
 [4]
 First Assembly argues that Grosz can no longer be considered good law because the district court relied on Grosz in deciding Hialeah and was reversed. Church of the Lukumi Babalu Ave, Inc. v. City of Hialeah, 723 F.Supp. 1467 (S.D.Fla.1989), aff'd, 936 F.2d 586 (11th Cir.1991), reversed, --- U.S. ----, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). We disagree. The Supreme Court reversed the application of Grosz, not the holding of Grosz itself or the reasoning behind it. Therefore, the Grosz case, correctly applied, still has precedential value in this circuit. Regardless, whether this court relies on Grosz, or relies exclusively on Hialeah, the result is the same: no Free Exercise Clause violation exists in this case