NOT DESIGNATED FOR PUBLICATION

No. 114,959

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TERRANCE ISAIAH SIMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL L. KLAPPER, judge. Opinion filed May 5, 2017. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Christopher L. Schneider*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., MCANANY, J., and HEBERT, S.J.

*Per Curiam*:  Following his convictions for aggravated criminal sodomy and two counts of rape, Terrance Isaiah Sims was required to register under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.*, with his local sheriff's office in the months of January, April, July, and October of each year for the remainder of his life. He was also required under K.S.A. 2013 Supp. 22-4905(k) (now K.S.A. 2016 Supp. 22-4905[l]) to pay a $20 fee to the sheriff each time he registered.

In October 2013, January 2014, and April 2014, Sims registered with the Wyandotte County Sheriff as an offender under KORA. On each occasion, Sims did not

1

pay the full $20 registration fee. He acknowledged this fact by signing each time a form notice entitled "NOTICE OF FAILURE TO PAY OFFENDER REGISTRATION FEE." The notice stated:

> "The Act requires that every person required to register <u>shall remit a payment to the sheriff in the amount of $20.00 on each occasion when the person reports to the sheriff's office in the county in which the person resides or is otherwise located.</u> The only exception to this is if you have a court order, signed by a judge, granting your indigence."

The notice also advised that Sims "could be charged with a misdemeanor, or potentially a felony, for failure to pay the fee." The notice then provided language from K.S.A. 2013 Supp. 22-4903(c)(3), which states a violation of KORA occurs if an offender fails to pay the registration fee within 15 days of his or her initial failure to pay the fee.

When Sims failed to pay the three registration fees within these 15-day periods, the State charged him with three counts of failure to pay offender registration fee, in violation of K.S.A. 2013 Supp. 22-4905(k) and K.S.A. 2013 Supp. 22-4903(c)(3).

Sims moved to suppress the notices he signed, arguing that signing the notices were not voluntary, and the sheriff failed to provide him with the required warnings for a custodial interrogation under *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966).

Sims also moved to dismiss the State's charges on the grounds that imposing criminal penalties based solely on a person's failure to satisfy the registration fee requirement of K.S.A. 2013 Supp. 22-4905(k) is unconstitutional because K.S.A. 2013 Supp. 22-4905(l) discriminated against indigent offenders based on wealth. He argued that punishing him for not paying the full fee was punishing him for being poor and was a

2

violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the statute discriminated based on wealth.

At the motion hearing, Sims acknowledged K.S.A. 2013 Supp. 22-4905(k) provided an exception from the fee requirement if a judge made a finding within 3 years prior to a registration date that Sims was indigent. But he contended this exception did not render the statute constitutional because, as a practical matter, a released indigent offender would not be entitled to court-appointed counsel to pursue such a court order, and an offender unable to pay the $20 registration fee could not reasonably be expected to be able to hire an attorney to obtain such an order.

The district court denied both the motion to suppress and the motion to dismiss. Thereafter, the district court conducted a bench trial on the following stipulated facts:

"1.     The Defendant was convicted of two counts of Rape and one count of Aggravated Criminal Sodomy, in Wyandotte County District Court case number 2004CR0497;

"2.     As a result of said conviction the Defendant is required to register for life pursuant to the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.*;

"3.     The Defendant is required to register during the months of July, October, January, and April;

"4.     On October 13, 2013, the Defendant, a resident of Wyandotte County, registered with the Sheriff of Wyandotte County as required by K.S.A. 22-4905(b);

"5.     The defendant did not pay the $20 registration fee required by K.S.A. 22-[4]905(k) to the Wyandotte County Sheriff at the time of registration on October 13, 2013, nor within 15 days thereafter;

"6.     On January 21, 2014, the Defendant, a resident of Wyandotte County, registered with the Sheriff of Wyandotte County as required by K.S.A. 22-4905(b);

"7.     The Defendant did not pay the $20 registration fee required by K.S.A. 22-[4]905(k) to the Wyandotte County Sheriff at the time of registration on January

3

21, 2014, nor within 15 days thereafter, resulting in two or more full payments not being remitted to the Sheriff;

"8.     On April 16, 2014, the Defendant, a resident of Wyandotte County, registered with the Sheriff of Wyandotte County as required by K.S.A. 22-4905(b);

"9.     The Defendant did not pay the $20 registration fee required by K.S.A. 22-[4]905(k) to the Wyandotte County Sheriff at the time of registration on April 16, 2014, nor within 15 days thereafter, resulting in two or more full payments not being remitted to the Sheriff;

"10.    The Defendant has not been found by a court to be indigent during the three years prior to October 13, 2013, nor at any time since;

"11.    That the Defendant's failure to pay the full registration fees for the months of October, 2013, January, 2014, and April, 2014, were not the result of the Defendant's intentional, willful, reckless or negligent acts;

"12.    The Defendant would present sufficient evidence for the court to make a finding of fact that his failure to remit registrations fees for October, 2013, January, 2014, and April, 2014, were because of his inability to afford the fee based on the totality of his financial circumstances;

"13.    That the Defendant was unable to hire an attorney as a result of his financial circumstances, nor was he eligible to obtain a court appointed attorney, to assist him in filing a motion requesting that a judge declare him indigent for the purpose of exempting him from payment of the registration fee imposed pursuant to K.S.A. 22-4905(k);

"14.    All three registrations by the Defendant and all three corresponding failures to pay the $20 statutory fee occurred at the Wyandotte County Courthouse, in Wyandotte County, Kansas, within the jurisdiction of this court."

In addition, Sims testified in his own defense. He admitted he failed to pay the registration fee in October 2013, January 2014, and April 2014. He testified that in October 2013 his sole income was disability benefits of $530 per month. He stated that he was adjudicated disabled for manic depression, which prevented him from being employed. He stated his expenses in October 2013 were $400 in rent, approximately $100 in utilities, a telephone bill, and other personal expenses. Sims testified that, at the

4

end of October 2013, he did not have money to pay the registration fee without ignoring his obligation to also pay his rent, his telephone bill, or his utilities bills.

Sims testified that, in January 2014, he was unable to pay the registration fee because he moved several times and had to use his entire disability check to pay an apartment deposit and first month's rent. He testified he was on the verge of homelessness. He recalled a similar situation occurring in April 2014. Sims claimed he did not intentionally, willfully, or negligently fail to pay the registration fees; rather, his financial circumstances prevented him from paying the fees. He also testified he was unable to hire an attorney to obtain a declaration of indigency. But he did not testify that he was unable to obtain free legal representation through Legal Aid of Wyandotte County, or legal representation on a pro bono basis or with a significantly deferred payment plan from a private attorney.

Sims explained he began receiving food stamps "sometime" in 2014 and still received them. He received a monthly $733 disability benefit and his current expenses were $250 for rent, $50 for a telephone bill, and any "hygiene and things that I need." Sims asserted the disability benefit covered all of his present monthly expenses. He claimed he wanted to move from his uncle and aunt's house and, at that point, it would be difficult to pay the offender registration fee.

Based on the stipulated facts and Sims' testimony, the district court found Sims guilty as charged. The district court denied Sims' request for a declaration of indigency, finding that his present monthly income was $733 and his monthly expenses were roughly $300 plus the cost of "hygiene items." Sims was granted a departure sentence of 12 months' probation with an underlying prison sentence of 13 months. Sims' appeal brings the matter to us.

*Sims' Motion to Dismiss*

Sims claims K.S.A. 2016 Supp. 22-4905(l), which requires an offender to pay a quarterly $20 registration fee, and K.S.A. 2016 Supp. 22-4903(c)(3), which criminalizes an offender's failure to pay the quarterly registration fee, violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

We exercise unlimited review when reviewing the constitutionality of a statute. See *Downtown Bar and Grill v. State*, 294 Kan. 188, 191-92, 273 P.3d 709 (2012). In doing so, we presume "statutes are constitutional and [resolve] all doubts in favor of a statute's validity. Courts must interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the legislature's apparent intent." *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 450, 264 P.3d 102 (2011) (citing *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 [2009]). Here, Sims, in challenging the constitutionality of these statutes, bears a "'weighty'" burden. *Downtown Bar and Grill*, 294 Kan. at 192 (citing *Steffes v. City of Lawrence*, 284 Kan. 380, 388, 160 P.3d 843 [2007]).

■ *Equal Protection*

The Fourteenth Amendment guarantees equal protection of the laws, and the Kansas Constitution Bill of Rights § 1 provides essentially the same protection. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 315, 255 P.3d 1186 (2011). In analyzing equal protection claims, we are instructed to use a "stair-step" approach. *Downtown Bar and Grill*, 294 Kan. at 192.

First, we determine the nature of the legislative classifications and whether the classifications "'result in arguably indistinguishable classes of individuals being treated

differently.'" 294 Kan. at 192 (quoting *Board of Miami County Comm'rs*, 292 Kan. at 315).

Second, we identify the rights affected by the classifications and determine, based on the nature of the classifications, the appropriate level of scrutiny. *Downtown Bar and Grill*, 294 Kan. at 192.

Third, we decide whether the relationship between the classifications and desired outcome withstand the appropriate level of scrutiny. *Downtown Bar and Grill*, 294 Kan. at 193.

1. *The nature of the classification and whether it results in arguably distinguishable classes of individuals treated differently*

The Equal Protection Clause requires that states treat "similarly situated" individuals similarly. *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 602, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008); see *In re Tax Appeal of Weisgerber*, 285 Kan. 98, 106, 169 P.3d 321 (2007) (statute which treats arguably indistinguishable classes of people differently implicates Equal Protection Clause). To successfully challenge a statute's constitutionality, the challenger must be similarly situated to members of a class receiving different treatment. In reviewing equal protection claims, we are limited "by the distinctions argued by the complaining party." *State v. Salas*, 289 Kan. 245, 249, 210 P.3d 635 (2009).

Here, Sims defines his class as "offenders required to pay the registration fee and [who] fail to do so for the *sole* reason that they are financially unable to do so." He claims that indigent individuals are similarly situated to individuals with financial ability to pay the fee, with "the only difference in the classes [being] the financial ability to pay" the offender registration fee. Sims acknowledges K.S.A. 2016 Supp. 22-4905(l) provides

7

indigent offenders an exception to the registration fee requirement but maintains the indigency exception "itself discriminates against the indigent" because it is not feasible for an indigent offender to hire and to pay an attorney to obtain an offender indigency declaration, which would exempt the offender from the registration fee requirement.

Under KORA, all offenders subject to the Act, whether indigent or not, are required to pay the same quarterly $20 registration fee and are subject to the same criminal charges if they fail to do so. Under the Act, all are treated the same. Sims seems to argue that rather than being unconstitutional under the Equal Protection Clause for treating similarly situated persons differently, the statute is unconstitutional for treating them the same.

But if we were to accept Sims' description of arguably indistinguishable classes of individuals being treated differently, we would have to move on to the second and third steps of the analysis described in *Downtown Bar and Grill*.

### 2. *The appropriate level of scrutiny*

We apply three levels of scrutiny in analyzing an equal protection claim: strict scrutiny, intermediate scrutiny, and rational basis review. *Board of Miami County Comm'rs*, 292 Kan. at 316. The appropriate level of scrutiny depends on the nature of the legislative classification and the rights affected by that classification. *State v. Limon*, 280 Kan. 275, 283, 122 P.3d 22 (2005). As a general rule, a law is subject to rational basis review unless the legislative classification targets a suspect class or burdens a fundamental right. *State v. Stallings*, 284 Kan. 741, 751, 163 P.3d 1232 (2007) (citing *Limon*, 280 Kan. at 284).

Sims contends that the appropriate level of scrutiny is a rational basis review. We agree. The challenged statutes neither target a suspect class nor burden a fundamental

8

right. Indeed, "[p]risoners and indigents are not suspect classes." *Smith v. McKune*, 31 Kan. App. 2d 984, 994, 76 P.3d 1060, *rev. denied* 277 Kan. 925 (2003). Here, the nature of the classification is an offender's financial ability to pay the quarterly $20 registration fee. The class Sims posits is indigent offenders. Because indigency is not a suspect classification, indigent offenders are not members of a suspect class. Moreover, nothing suggests the offender registration fee requirement of K.S.A. 2016 Supp. 22-4905(l) impinges an indigent offender's fundamental rights. The statute does not deprive an offender the right to meaningful access to the courts, the right to marry, the right to privacy, the right to interstate travel, or any other fundamental right. Accordingly, because the challenged statutes neither target a suspect class nor burden a fundamental right, the appropriate level of scrutiny is a rational basis review.

3. *The relationship between the statute's classifications and its desired outcome*

As the final step of the equal protection analysis, we must determine whether the challenged classification withstands rational basis review. See *State v. Cheeks*, 298 Kan. 1, 4-5, 310 P.3d 346 (2013). A law is constitutional under rational basis review, despite an unequal classification of individuals, if the "classification bears some reasonable relationship to a valid legislative objective." *Farley v. Engelken*, 241 Kan. 663, Syl. ¶ 3, 740 P.2d 1058 (1987).

> "The 'reasonable basis' test is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power, even if the statute results in some inequality. Under the reasonable basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [Citations omitted.]" *Leiker v. Gafford*, 245 Kan. 325, 363-64, 778 P.2d 823 (1989).

9

When reviewing possible governmental objectives, we do not focus on the legislature's actual rationale for the classification. Rather, we consider "whether the legislature could have had a legitimate reason for drawing the challenged classification." *Cheeks*, 298 Kan. at 8. The legitimate reason and means chosen to accomplish the goal must "bear a rational relationship to those goals." *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 198, 62 P.3d 236 (2003). Thus, to pass constitutional muster under rational basis review, "the proffered rational basis must both explain the distinction drawn by the statute between two classes of individuals *and* be a legitimate legislative objective." *Cheeks*, 298 Kan. at 8; see *Mudd*, 275 Kan. at 198. Sims is burdened with negating every conceivable rational basis which might support the differing treatment. See *Downtown Bar and Grill*, 294 Kan. at 195.

Here, the primary goal of KORA is public safety. See *State v. Weis*, 47 Kan. App. 2d 703, 718-19, 280 P.3d 805 (2012), *rev. granted* 304 Kan. 1022 (2016). The specific purpose of the quarterly registration fee required by K.S.A. 2016 Supp. 22-4905(l) is to reimburse sheriff's offices for services provided as part of the regulatory scheme of offender registration. 47 Kan. App. 2d at 719.

Sims contends reimbursement of sheriff's offices is not rationally related to the criminalization of offenders who fail to pay the registration fee. He argues that the threat of criminal conviction does not incentivize an indigent offender to pay the registration fee. But we have held that an offender's exposure to further criminal liability for violating KORA "is necessary for the efficacy of the regulatory scheme." *State v. Unrein*, 47 Kan. App. 2d 366, 372, 274 P.3d 691 (2012), *rev. denied* 297 Kan. 1256 (2013). It "is not punishment . . . but a means to effect the intent behind registration, which is public safety." *Weis*, 47 Kan. App. 2d at 719; see *Unrein*, 47 Kan. App. 2d at 372. Thus, the criminalization of an offender's KORA violations, including failing to pay the registration fee, is rationally related to the legitimate governmental interest in effecting the more general legislative goal of public safety.

Relying on *Williams v. Illinois*, 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970), and *Tate v. Short*, 401 U.S. 395, 91 S. Ct. 668, 28 L. Ed 2d 130 (1971), Sims compares the criminalization of an offender's failure to pay the quarterly registration fee to the equal protection prohibition against incarcerating indigent defendants solely based on the defendant's financial inability to pay fines or restitution. But in *Williams*, the United States Supreme Court held an equal protection violation occurs when an indigent criminal defendant is imprisoned in default of payment of a fine beyond the maximum sentence authorized by the statute regulating the substantive offense. 399 U.S. at 240-41. The *Williams* Court explained, once a state has "defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." 399 U.S. at 241-42. Rather, the Equal Protection Clause "requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status." 399 U.S. at 244. In applying those concepts, the Court noted the challenged statute did not distinguish between defendants on the basis of ability to pay fines. Although the statute appeared nondiscriminatory on its face, the Court observed that the statute as applied to the defendant worked "an invidious discrimination solely because he [was] unable to pay the fine." 399 U.S. at 242. The Court concluded the challenged statute's operative effect exposed *only* indigent criminal defendants to the risk of imprisonment beyond the statutory maximum. 399 U.S. at 243-44.

Later, in *Tate*, the Court addressed a similar equal protection challenge. There, the challenged statute set a statutory ceiling of a fine for all traffic offenses. The state law converted the fine to imprisonment for those unable to pay the fine. Based on its prior decision in *Williams*, the Court held the statute was inconsistent with the Equal Protection Clause. *Tate*, 401 U.S. at 399.

11

In those cases, the defendants were incarcerated for failure to pay fines associated with their substantive crimes of conviction. For example, in *Williams*, the trial court continued the defendant's confinement beyond the maximum term allowed by statute because of the defendant's failure to pay the monetary provisions of the sentence. Here, the requirements of KORA are separate from an offender's substantive crime of conviction. KORA's imposition of further criminal liability for violating its terms is wholly separate from an offender's crimes requiring registration. See *Weis*, 47 Kan. App. 2d at 718-19.

Thus, we conclude that the challenged classification bears a rational basis to a legitimate governmental interest. Accordingly, the challenged statutes withstand rational basis review and are constitutional under the Equal Protection Clause.

■ *Due Process*

Sims argues in the alternative that the challenged statutes violate his substantive due process rights under the Fourteenth Amendment. Similar to his first claim, Sims asserts the challenged statutes further no governmental interest and, as a result, are constitutionally impermissible.

Substantive due process protects a narrow range of fundamental liberty interests, not otherwise enumerated in the United States Constitution, against government encroachment. See *Taylor v. Kansas Dept. of Health & Environment*, 49 Kan. App. 2d 233, 244, 305 P.3d 729 (2013), *rev. denied* 299 Kan. 1274 (2014). "Among recognized substantive due process liberty interests are the right to bear and raise children, the right to marry, and various other rights closely allied with those explicitly guaranteed in the Bill of Rights." 49 Kan. App. 2d at 244. Substantive due process protects an individual from arbitrary government action that either (1) furthers no legitimate governmental interest or (2) is so outrageous that it "'shocks the conscience.'" 49 Kan. App. 2d at 244.

12

Here, Sims' only assertion is the challenged statutes further no legitimate governmental interest. Sims does not argue the challenged statutes are so outrageous that they shock the conscience.

In analyzing a substantive due process claim, we balance "'the nature of the individual interest infringed, the importance of the government interest furthered, the degree of infringement and the sensitivity of the government entity responsible for the action to more carefully tailored alternative means of achieving its goal.' [Citations omitted.]" *Darling v. Kansas Water Office*, 245 Kan. 45, 51, 774 P.2d 941 (1989).

Sims' sole assertion is the criminalization of an offender's failure to pay the $20 registration fee does not further the government's interest in reimbursing sheriff's offices for providing registration services. He argues that for indigent offenders, criminalizing the failure to pay the registration fee does not increase the likelihood of payment.

Contrary to Sims' assertion, the challenged statutes criminalizing the failure to pay the registration fee advance a legitimate governmental interest. As already discussed, an offender's exposure to further criminal liability for violating KORA "is necessary for the efficacy of the regulatory scheme." *Unrein*, 47 Kan. App. 2d at 372. The threat of criminal liability is a means to achieve KORA's purpose—public safety. 47 Kan. App. 2d at 372. Thus, although the registration fee is a means to reimburse the sheriff's offices for services provided in furtherance of KORA's regulatory scheme, the purpose of criminalizing nonpayment of the registration fee is public safety. See *Weis*, 47 Kan. App. 2d at 718-19.

Sims relies on *Bearden v. Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983), to support his claim that the challenged statutes further no legitimate governmental interest. But in *Bearden*, the United States Supreme Court held a state may not use, as the *sole justification* for imprisonment, the inability of the probationer to pay

13

the fine and to make restitution if the probationer has demonstrated sufficient bona fide efforts to do so. 461 U.S. at 672-73. Conversely, the challenged statutes here further the legitimate governmental interest of public safety; thus, the sole justification underlying the statutes is not the offender's inability to pay.

Sims has failed to demonstrate the challenged statutes violate either his equal protection or his substantive due process rights. The district court did not err in denying Sims' motion to dismiss.

*Sims' Motion to Suppress*

Next, Sims argues the district court should have suppressed the notices he signed because he signed them during a custodial interrogation without first being given *Miranda* warnings and, alternatively, because he signed them involuntarily.

Because neither party disputes the material facts underlying the district court's ruling on Sims' motion to suppress, the sole issue is the legal issue of whether those facts required the court to suppress the notices as evidence. Thus, our review is unlimited. See *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

■ Miranda *Issue*

The Fifth Amendment to the United States Constitution guarantees the right against self-incrimination. See *State v. Lewis*, 258 Kan. 24, Syl. ¶ 1, 899 P.2d 1027 (1995). Section 10 of the Kansas Constitution Bill of Rights recognizes the same guarantee. *State v. Ninci*, 262 Kan. 21, 34, 936 P.2d 1364 (1997). In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966), the United States Supreme Court extended the right against self-incrimination, holding "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from

14

*custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (Emphasis added.) Thus, law enforcement officers are not required to administer *Miranda* warnings to everyone questioned, only to those who are (1) in custody and (2) subject to interrogation. *State v. Warrior*, 294 Kan. 484, 496, 277 P.3d 1111 (2012).

A person is in custody for *Miranda* purposes when the person is formally taken into custody or deprived of his or her freedom of action in a significant way. *State v. Bordeaux*, 38 Kan. App. 2d 757, Syl. ¶ 2, 172 P.3d 78 (2007). A custodial interrogation is distinguished from an investigatory interrogation, which occurs as a routine part of the fact-finding process before the investigation has reached the accusatory stage. *State v. Jacques*, 270 Kan. 173, 185-86, 14 P.3d 409 (2000).

To determine whether an interrogation was investigative or custodial, a court considers eight factors:

> "(1) the time and place of the interrogation; (2) the duration of the interrogation; (3) the number of law enforcement officers present; (4) the conduct of the officers and the person subject to the interrogation; (5) the presence or absence of actual physical restraint or its functional equivalent, such as drawn firearms or a stationed guard; (6) whether the person is being questioned as a suspect or a witness; (7) whether the person being questioned was escorted by the officers to the interrogation location or arrived under his or her own power; and (8) the result of the interrogation, for instance, whether the person was allowed to leave, was detained further, or was arrested after the interrogation." *Warrior*, 294 Kan. at 496.

A court analyzes every case on its own particular facts. 294 Kan. at 496-97. Thus, "'[n]o one factor outweighs another, nor do the factors bear equal weight.'" 294 Kan. at 496-97 (quoting *State v. Schultz*, 289 Kan. 334, 341, 212 P.3d 150 [2009]).

When considering whether an interrogation was custodial, we must (1) determine the circumstances surrounding the interrogation, employing a substantial competent evidence standard of review without reweighing the evidence, assessing the credibility of witnesses, or resolving conflicts in the evidence; and then (2) determine de novo whether, under the totality of those circumstances, a reasonable person would have felt free to terminate the interrogation and disengage from the encounter. *Warrior*, 294 Kan. at 497. In doing so, we apply an objective standard to determine whether an interrogation was custodial, asking how a reasonable person in the suspect's situation would have perceived his or her circumstances. Thus, custody "'depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" *State v. Jones*, 283 Kan. 186, 193, 151 P.3d 22 (2007) (quoting *Stansbury v. California*, 511 U.S. 318, 323, 114 S. Ct. 1526, 128 L. Ed. 2d 293 [1994]).

Applying the *Warrior* factors:  *First*, we find no evidence that suggests law enforcement suspected Sims of any crimes when he signed the notices, but the signing took place at the sheriff's office, suggesting the possibility of a custodial encounter. *Second*, there is nothing to indicate the duration of the encounter was significant. *Third*, only one officer was present when Sims signed the notices. Even if two officers were present, that would not influence the analysis. See *Warrior*, 294 Kan. at 498. *Fourth*, there is no evidence the officer used coercive threats or a hostile or accusatory tone. *Fifth*, the sheriff's deputy did not exercise any control over Sims or restrain him from leaving. *Sixth*, Sims was not a suspect because he was not under investigation for committing a crime. *Seventh*, Sims went to the sheriff's office voluntarily, albeit to execute a mandatory registration. And *Eighth*, Sims was not arrested after signing the notices but was allowed to leave the sheriff's office without any restraint. Under these circumstances, we conclude that a reasonable person would have felt free to terminate the questioning and disengage from the encounters. Thus, Sims was not in custody when he signed the notices, and this encounter did not implicate any mandatory warnings under *Miranda*.

16

Under *Miranda*, interrogation by the authorities refers to both express questioning and its functional equivalent, *i.e.*, "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980); see *State v. Hebert*, 277 Kan. 61, 70, 82 P.3d 470 (2004). Courts apply an objective standard when determining whether a law enforcement officer knows his or her words or actions are reasonably likely to elicit an incriminating response. *State v. Warledo*, 286 Kan. 927, 936, 190 P.3d 937 (2008).

Here, there is no evidence that Sims was subject to express questioning or its functional equivalent. No evidence suggests Sims signed the notices in response to express questioning. When asked to sign the notices, Sims had not committed a crime and was not admitting criminal guilt. No statements in the notices indicated that Sims did not intend to pay the fee. Here, the notices were merely an acknowledgment that failure to pay the registration fee within 15 days *could* result in criminal charges. Although Sims acknowledged he had not yet paid the fee when he signed each notice, he still had an opportunity to conform his conduct to the law by fully paying the registration fee within 15 days. Sims signing the notices was not the product of an interrogation.

■ *Voluntariness*

Sims argues in the alternative that signing the notices was not the product of his free and independent will because his signature was required as part of his registration and because he faced criminal charges for failing to pay the registration fee. While *Miranda* is "'the first line of inquiry in every case, the voluntariness standard is the ultimate criterion for the admissibility of a confession.'" *State v. Morton*, 286 Kan. 632, 649-50, 186 P.3d 785 (2008) (quoting 3 Ringel, Searches & Seizures, Arrests and Confessions § 24:5 [2d ed. 1993]).

17

Again, we examine the totality of the circumstances to determine whether Sims' statement was voluntary. See *State v. Walker*, 283 Kan. 587, 596, 153 P.3d 1257 (2007). In doing so, we consider six nonexclusive factors:

> "'(1) the accused's mental condition; (2) the duration and manner of the interrogation; (3) the ability of the accused on request to communicate with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language.' [Citations omitted.]" *State v. Swindler*, 296 Kan. 670, 678, 294 P.3d 308 (2013).

K.S.A. 2016 Supp. 60-460(f) also governs the admissibility of confessions or statements by the accused:

> "In a criminal proceeding as against the accused, a previous statement by the accused relative to the offense charged [is admissible], but only if the judge finds that the accused: (1) When making the statement was conscious and was capable of understanding what the accused said and did; and (2) was not induced to make the statement: (A) Under compulsion or by infliction or threats of infliction of suffering upon the accused or another, or by prolonged interrogation under such circumstances as to render the statement involuntary; or (B) by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same."

Here, the State has the burden to prove, by a preponderance of the evidence, that Sims' statements were voluntarily made. See *State v. Gilliland*, 294 Kan. 519, 528, 276 P.3d 165 (2012).

Sims does not claim his mental condition affected his decision-making ability. Nothing about the manner or duration of the encounter, or Sims' age, intellect, and background, suggests that his statements were involuntary. There is no evidence that

18

Sims was unable to communicate on request with the outside world; that he was not fluent in the English language; or that the officer was hostile, threatening, or abusive toward him. Instead, Sims' sole claim is that he was given no alternative: he could either sign the notices or face criminal charges for failing to register.

We fail to see the merit of this claim. With respect to the first and second notices Sims signed, the forms had a space where the officer could attest that "notice was given but [the] individual refused to sign." The third notice simply provides a space for the officer to attest that "notice was given" in addition to the signature line provided for the registering person. There is nothing about these forms that indicate that Sims was compelled to sign. Nor do we find any statute or rule requiring him to do so. Further, Sims identifies no overbearing conduct or misleading statements by the officer to overcome Sims' free will, unlike the situation in *Morton*, the case on which he relies.

Under the totality of the circumstances, Sims' decision to sign the notices was the product of his free and independent will. The district court did not err in denying Sims' motion to suppress.

Apprendi *Issue*

As his final point, Sims claims the district court violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it used his prior criminal convictions to increase his sentence without requiring the State to prove them to a jury beyond a reasonable doubt. The Kansas Supreme Court rejected this *Apprendi* claim in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), and in a multitude of decisions since then. We are duty bound to follow this Kansas Supreme Court precedent, absent some indication the court is departing from its earlier position in *Ivory*. See *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan.

19

1012 (2015). We see no such indication. See *State v. Barber*, 302 Kan. 367, 386, 353 P.3d 1108 (2015). This final claim fails.

Affirmed.