(305 P.3d 729)
No. 108,630

NICHOLAS TAYLOR and WILLIAM TAYLOR, *Appellees*, v. KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT, DIVISION OF HEALTH CARE FINANCE, *et al.*, *Appellants*.

Opinion filed August 2, 2013.

*Brian M. Vazquez*, of Kansas Department of Health & Environment, of Topeka, for appellants.

*David P. Calvert*, of David P. Calvert, P.A., of Wichita, for appellees.

Before ATCHESON, P.J., GREEN and MCANANY, JJ.

ATCHESON, J.: This case requires the court to decide a narrow, if seldom litigated, question: If a state fails to properly apply its own procedures for adopting administrative regulations to an agency policy, does that failure create a federal constitutional due process violation in favor of persons affected by the policy? The Sedgwick County District Court ruled that Plaintiff Nicholas Taylor suffered a constitutional injury when Defendant Kansas Department of Health and Environment did not treat a policy applicable to him as part of the State's Medicaid program as a formal administrative regulation. The district court entered judgment against high ranking employees of the agency and enjoined enforcement of the policy. As a general rule, however, that sort of bureaucratic misstep does not amount to a constitutional deprivation. This case presents no exception to the rule. We, therefore, reverse the district court and remand with directions to enter judgment for the defendants, to vacate an award of attorney fees and costs to Taylor, and to otherwise proceed in conformity with this opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Taylor has a rare and debilitating physical condition known as arthrogryposis multiplex congenita that affects his joints and muscles. As a result, Taylor is essentially wheelchair bound and requires assistance with most daily life activities. Taylor, therefore, qualifies for and receives Social Security disability and Medicaid benefits. Despite his condition, Taylor has become a world-class wheelchair tennis player. He regularly travels nationally and internationally from his Wichita home to compete in tournaments and to give motivational speeches. We understand he earns a modest income from those endeavors.

The Department operates what is known as the Working Healthy program that encourages persons receiving disability benefits, such as Taylor, to work as they may be able. Participants pay premiums into the program in exchange for assistance with medical expenses without having to satisfy certain Medicaid restrictions. As a component of the Working Healthy program, the Department maintains a subsidiary program known as Work Opportunities Reward Kansans or WORK that is directly at issue in Taylor's suit. Under WORK, the Department evaluates the extent of care or assistance participants need to work and otherwise meet their daily needs. The Department then provides a monthly payment to a participant to hire the necessary caregivers. In 2009, Taylor began participating in the WORK program. As a WORK participant, Taylor agreed in writing to abide by the program policies.

Based on the nature of his disability, Taylor was approved for about 403 hours of assistance a month at the Department's established hourly rate and, as a result, received a monthly payment of $5,350 for that purpose. Because Taylor had unfortunate experiences with incompetent and even negligent caregivers, he chose to hire William Taylor, his father, as his exclusive assistant. As a result, some of the monthly allocation was used to pay overtime to William. And, as we understand matters, William sometimes provided care without compensation if he put in more time than the monthly allocation covered. In January 2010, Taylor submitted and the Department approved a WORK budget of $5,350 a month for 350 hours of regular and overtime care services from William.

In August 2010, the Department notified WORK participants, including Taylor, that it would no longer approve overtime wages for caregivers. The Department then notified Taylor and other participants with budgeted overtime that they would have to submit revised budgets in conformity with the no-overtime policy. The Department estimated that between 15 and 25 WORK participants were affected. The policy effectively required participants who were paying caregivers overtime to substitute other caregivers paid at the regular wage rate for services in excess of 40 hours a week.

Taylor submitted a modified budget for only 160 hours a month, covering regular hours for William with no overtime. In short, Tay-

lor declined to hire anyone else as a caregiver through WORK. Nonetheless, Taylor has requested and the Department has granted him specific exemptions from the no-overtime policy for trips to tennis tournaments and other engagements requiring travel because of logistical problems in securing short-term care in distant locations. Taylor has traveled with his father as his caregiver.

In October 2010, Taylor sent a written protest to the Department regarding the no-overtime policy. He later requested an administrative hearing. The hearing was held on February 24, 2011. The hearing officer declined to provide Taylor any relief from the policy. Taylor also asserted that the policy amounted to an administrative regulation that had not been properly adopted as such. The hearing officer found that issue to be outside the scope of the proceedings.

On April 4, 2011, Taylor brought this action in the district court and named as defendants the Department; Andrew Allison, the executive director of the Department; Mary Ellen Wright, the senior manager of the Working Healthy program; and Nancy Scott, a manager of WORK. William Taylor also appears as a plaintiff, but he asserts no separate or independent claim, so we treat Taylor and his father together. About 2 months later, Taylor filed an amended petition. Taylor asserted that the agency decision denying him a complete release from the no-overtime policy was erroneous and should be reversed under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* He also contended that the Department should have adopted the no-overtime policy as an administrative regulation, as provided in the Rules and Regulations Filing Act, K.S.A. 77-415 *et seq.*, and the failure to do so rendered it invalid. So, he argued, the Department's decision to apply an invalid regulation to him denied him due process in violation of the Fourteenth Amendment to the United States Constitution. He also alleged a violation of the Fourteenth Amendment's Equal Protection Clause. Taylor brought the due process and equal protection claims under 42 U.S.C. § 1983 (2006), a statute establishing a procedural means for individuals to assert claims that state or local government officials or agents have violated rights protected in the United States Constitution or other federal law. Taylor did not actively

litigate the equal protection violation, and it is not before us. Finally, Taylor alleged what he characterized as a "damages" claim for wages that would have been available to his father through WORK absent the no-overtime policy.

In his amended petition, Taylor requested an injunction prohibiting enforcement of the no-overtime policy, attorney fees and costs for litigating the § 1983 claim, and the unpaid wages. The Department and its employees answered and denied any violation of Taylor's rights or any liability to him. The Department has asserted that the no-overtime policy is not a regulation that must be adopted through the Rules and Regulations Filing Act. The Department and its employees have been jointly represented throughout the case, so we treat them more or less collectively here.

The district court heard the case without a jury on October 27, 2011. Before presenting any evidence, the parties agreed to several modifications of the claims. Taylor dismissed his claim under the Judicial Review Act. And he dismissed the Department as a defendant in the § 1983 claim. As part of the §1983 claim, Taylor added an allegation the no-overtime policy violated the Supremacy Clause of the United States Constitution. As to the wage claim, Taylor also alleged William should be allowed to recover as a third-party beneficiary of the contractual relationship between the Department and the federal agency overseeing WORK.

The district court issued a detailed memorandum decision and order on May 10, 2012. The district court found for Taylor on his §1983 due process claim. But the district court found against him on the Supremacy Clause theory and declined to award wages to William on any theory. Taylor has not appealed the rulings against him, and they are not before us. The district court enjoined the Department from enforcing the no-overtime policy. The district court later awarded Taylor attorney fees and costs on the § 1983 claim. The defendants have timely appealed.

## LEGAL ANALYSIS

### Standard of Review and Controlling Issue Defined

In a case tried to a district court without a jury, we review findings of fact to assess whether they have substantive support in the

record evidence. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). We defer to the district court's credibility determinations and other resolutions of conflicts in the evidence. *In re Adoption of Baby Girl P.*, 291 Kan. 424, 430-31, 242 P.3d 1168 (2010). In turn, we ask whether those factual findings warrant the legal conclusions. But we review ultimate legal conclusions without deference to the district court. *American Special Risk Management Corp. v. Cahow*, 286 Kan. 1134, 1141, 192 P.3d 614 (2008).

As we suggested at the outset, Taylor's success in the district court turns on the validity of his theory that a state agency's failure to properly adopt an administrative regulation creates a cognizable due process violation under the Fourteenth Amendment. We perceive no conflicts in the factual evidence bearing on the controlling issue, so it really comes to us as a legal question over which we exercise unlimited review.

*No-Overtime Policy as Administrative Regulation: An Assumption We Make*

If the disputed overtime policy individually or in conjunction with the rest of the procedures for WORK or the Working Healthy program is, in fact, a regulation, it must be implemented in conformity with the Rules and Regulations Filing Act, K.S.A. 77-415 *et seq.* The Act requires that proposed regulations go through a public notice and hearing process and then be formally published before taking effect. See K.S.A. 2011 Supp. 77-415a; K.S.A. 2011 Supp. 77-416; K.S.A. 2011 Supp. 77-421. Everyone agrees the Department did not adopt the overtime policy as a regulation. If a state agency fails to submit a policy that by content and effect is a regulation to the notice and publication requirements of the Act, the policy is void. *Bruns v. Kansas State Bd. of Technical Professions*, 255 Kan. 728, 734, 877 P.2d 391 (1994).

Under the Act, a regulation is defined as "a standard, requirement or other policy of general application that has the force and effect of law . . . issued or adopted by a state agency to implement or interpret legislation." K.S.A. 2011 Supp. 77-415(c)(4). But determining when a policy operates as a regulation subject to notice and publication is hardly clear cut. The statutory definition is less

than explicit, and the caselaw hasn't provided an especially useful predictive test. What amounts to "general application" is murky. See *Bruns*, 255 Kan. at 733-34 (board's policy of refusing to grant a Kansas engineering license by reciprocity when applicant's original out-of-state license has lapsed amounts to a regulation because it governs anyone seeking reciprocal licensing); *Gilmore v. Mc-Kune*, 23 Kan. App. 2d 1029, 1034, 940 P.2d 78 (1997) (warden's order not a regulation subject to notice and publication because it applies only to a limited subgroup of inmates and, therefore, is not of general application). The record evidence shows the no-overtime policy affected 15 to 25 persons, including Taylor.

For purposes of deciding this case, we assume the no-overtime policy to be a regulation. Maybe it is; maybe it isn't. It's hard to tell, especially given the limited number of people affected. So rather than trying to make what's legally muddy on that score clear, we turn to the efficacy of Taylor's claimed constitutional injury to resolve this appeal.

Ordinarily, courts should refrain from deciding constitutional issues if a case can be disposed of on other grounds. See *Lyng v. Northwest Indian Cemetery Prot. Assn.*, 485 U.S. 439, 445-46, 108 S. Ct. 1319, 99 L. Ed. 2d 534 (1988). But that is not an invariable rule. See *Pearson v. Callahan*, 555 U.S. 223, 241-42, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (discussing circumstances in which a court properly may exercise discretion to address rather than defer a constitutional question). Nor is it, strictly speaking, applicable here. Ultimately, we apply settled authority to hold that Taylor presents no constitutional claim at all—a result that differs to some degree from deciding if a party has asserted a constitutional injury as a matter of first impression. In short, we break no constitutional ground today.

Given those circumstances, we take a path that favors conserving judicial resources and rendering the parties a timely determination. As we have indicated, whether the policy should be considered a regulation presents a fairly debatable proposition and, thus, one without a readily discernible answer. If we were to engage that proposition and conclude the policy is not a regulation, the case ends in the defendants' favor without reaching the constitutional

issue—there can be no due process violation in failing to adopt as a regulation that which is not a regulation. But on review, the Kansas Supreme Court might well conclude the policy to be a regulation, thus resurrecting the constitutional question and possibly prompting a remand for its consideration.

Rather than explore the difficult policy-regulation issue, we assume it away. Having presumed the overtime policy to be a standard that properly should have been adopted as a regulation—something that didn't happen here—we jump to the much easier constitutional issue.

### No Due Process Violation

Taylor contends the Department's failure to go through the notice and publication process required under the Act before enforcing the overtime policy deprived him of due process protections secured in the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment protects both procedural and substantive due process rights against state government interference. We understand Taylor to be arguing that he was denied procedural due process, although we consider both sets of rights.

As outlined by the United States Supreme Court, constitutionally protected procedural due process requires that a person be afforded a right to be heard in a meaningful way before being deprived of "life, liberty, or property." U.S. Const. amend. XIV, § 1; *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation omitted.]"); *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 2d 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). The Kansas Supreme Court similarly defines due process rights. *State v. King*, 288 Kan. 333, 354, 204 P.3d 585 (2009); *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 409-10, 49 P.3d 1274 (2002). Here, Taylor had a property interest in the

monthly WORK payments, as part of the Medicaid program, sufficient to trigger Fourteenth Amendment due process protections. See *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 786-87, 100 S. Ct. 2467, 65 L. Ed. 2d 506 (1980); *Goldberg v. Kelly*, 397 U.S. 254, 261-63 & n.8, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); *Hamby v. Neel*, 368 F.3d 549, 559-60 (6th Cir. 2004).

The Department informed Taylor of the no-overtime policy affecting pay for caregivers hired through the WORK program. He had a hearing to plead his case for an exemption from the policy so he could rely exclusively on his father as an assistant. And the Department approved limited and specific exceptions to the overtime restrictions when Taylor traveled to tennis tournaments. All of that is undisputed. Taylor has not argued that he lacked fair notice of the policy or that he received a constitutionally inadequate hearing. The record reveals no apparent constitutional defects in those respects.

Rather, Taylor argues that the Department's failure to adopt the no-overtime policy as a regulation in conformity with the Act creates an independent constitutional due process violation. Apart from cases reciting the general procedural due process precepts of notice and opportunity to be heard, he offers no authority supporting the proposition that a state's failure to enact a regulation in conformity with its own statutes creates a federal cause of action under § 1983 for a constitutional due process violation.

In its memorandum decision, the district court likewise cites no caselaw supporting the notion that a constitutional injury has been inflicted on Taylor because the Department did not treat the policy as a regulation. The district court recognized correctly that Taylor had a protected property interest in his Medicaid benefits and could not be deprived of them without notification and an opportunity to be heard. But, as we have said, Taylor had adequate notice of the policy and a hearing regarding how it would be applied to his benefits—he doesn't claim otherwise. The district court also found that the overtime policy should have been adopted as a regulation, something we have assumed to be so. But those circumstances do not combine to create an additional or distinct constitutional wrong.

Courts considering the issue have consistently held that a state's failure to properly follow its own requirements for enacting administrative regulations or other regulatory rules does not itself create a federal constitutional violation. *First Assembly of God v. Collier County, Fla.*, 20 F.3d 419, 421-22 (11th Cir. 1994) (property owner has no due process claim based on defects in size and content of initial published notification of proposed zoning ordinance in newspaper and on city's failure to annually "codify" or publish zoning ordinance, all as required by Florida law); *LaBoy v. Coughlin*, 822 F.2d 3, 4-5 (2d Cir. 1987) (failure to file regulation with New York Secretary of State, as required by state law, does not create Fourteenth Amendment due process violation); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527-28 (11th Cir. 1987); *Martin v. Blackburn*, 581 F.2d 94, 94 (5th Cir. 1978) (" 'The claim that state officials have failed to follow the procedural provisions of state law, without more, does not aver a cause of action under § 1983.' ") (quoting *Shields v. Hopper*, 519 F.2d 1131, 1132 [5th Cir. 1975]). As the Eleventh Circuit recognized: "[T]he violation of a state statute mandating procedure is not the equivalent of a federal Constitutional violation." *First Assembly of God*, 20 F.3d at 422.

More broadly, courts have long recognized that not every breach or violation of state law by a government agent gives rise to a constitutional wrong. See *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) ("We remain cautious not to turn every alleged state law violation into a constitutional claim."); *Trotter v. Regents of University of New Mexico*, 219 F.3d 1179, 1185 (10th Cir. 2000) (Even assuming a graduate school failed to follow its own regulations in dismissing a student for poor academic performance, that "failure would not, by itself, give rise to a constitutional claim under the Fourteenth Amendment.").

The essence of constitutionally protected procedural due process is notification to an individual of the basis for pending government action impairing or extinguishing his or her protected property right or liberty interest and a meaningful opportunity to explain why that action would be improper or erroneous. *Memphis*

*Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 17-18, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978); *Goldberg*, 397 U.S. 267-68; *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 331, 291 P.3d 1056 (2013) ("procedural due process . . . requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner"). That is a fundamental right or protection against government overreaching and aims to prevent a wrongful deprivation. As we have said, Taylor was afforded procedural due process consistent with those objectives. The Department did not purport to act under a secret policy that hadn't been disclosed to him. Nor was he deprived of a meaningful opportunity to argue for relief from the no-overtime policy. Taylor actually had modest success in getting the Department to bend the policy when he attained exemptions for his travels to speaking engagements and tennis tournaments.

How the Department promulgated the policy didn't cause that notice and opportunity to be heard to evaporate or to become constitutionally insufficient. Taylor received the constitutional process he was due. Similarly, state law governing procedures for adopting administrative regulations creates no freestanding constitutional right or interest vested in persons to whom the regulation may apply. So the failure of the Department to treat the no-overtime policy as a formal regulation under the Rules and Regulations Filing Act does not rise to the level of a fundamental constitutional deprivation. Taylor could not base a § 1983 claim on the Department's presumed violation of the Act.

Our decision does not mean Taylor was without a remedy in this case. He could have sought relief under the Kansas Judicial Review Act for a determination that the Department had failed to adopt the policy as a regulation and could have requested an injunction to halt the policy's implementation for that reason. See K.S.A. 2011 Supp. 77-621(c)(4) (court may grant relief if "the agency has erroneously interpreted or applied the law"); (c)(5) (court may grant relief if "the agency . . . has failed to follow prescribed procedure"); K.S.A. 77-622(b) (court may grant declaratory or injunctive relief); see also *Bruns*, 255 Kan. at 729. Those would be state law claims, not unlike the one he dismissed before trial, rather than a federal

constitutional due process claim. See *Harris*, 817 F.2d at 1528 (noting that the absence of a constitutional due process claim does not deprive plaintiff of state law remedies to enforce procedural right conferred by state statute). We express no opinion on the likelihood of Taylor's success on any state law claims, since those claims are not before us and we have not attempted to determine whether the no-overtime policy should have been adopted as a formal regulation.

We do not understand Taylor to be making a substantive due process claim under the Fourteenth Amendment. A substantive due process claim also would fail. That aspect of due process protects a narrow range of fundamental liberty interests against government encroachment. *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997); *Katz v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 877, 896, 256 P.3d 876 (2011). Those liberty interests must be "deeply rooted" in the nation's history and experience. *Glucksburg*, 521 U.S. at 720-21. Justice Benjamin Cardozo described substantive due process rights as part of "the very essence of a scheme of ordered liberty" and inseparably entwined with " 'a principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937). Among recognized substantive due process liberty interests are the right to bear and raise children, the right to marry, and various other rights closely allied with those explicitly guaranteed in the Bill of Rights. See *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); *Glucksberg*, 521 U.S. at 720. In addition, especially egregious or arbitrary actions of government officials may violate substantive due process protections of the Fourteenth Amendment if they further no legitimate governmental interest or their character "shocks the conscience." *Lewis*, 523 U.S. at 845-47; *Katz*, 45 Kan. App. 2d at 896. Whatever else may be said about Taylor's grievance with the Department, it does not amount to a violation of substantive due process. See *Village Villa*, 296 Kan. at 334 (substantive due process not implicated in "economic liberties"); *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1187 (10th Cir. 2009) (A

Medicaid applicant has no substantive due process claim when "his eligibility determination [is] made pursuant to a written, ascertainable standard.").

*Attorney Fees*

The district court awarded attorney fees and certain litigation costs to Taylor under 42 U.S.C. § 1988 (2006). That statute permits a court to award fees and costs to a "prevailing party" in an action brought under various civil rights statutes, including § 1983. A winning plaintiff typically will be granted reasonable attorney fees and allowable costs. To qualify as a prevailing party for a fee award under § 1988, "a civil rights plaintiff must obtain at least some relief on the merits of his [or her] claim." *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). That entails "an enforceable judgment against the defendant from whom fees are sought." 506 U.S. at 111. Because Taylor neither alleged nor proved a constitutional wrong, he had no viable legal claim under § 1983.

We have reversed the judgment in Taylor's favor with directions that the district court enter judgment in favor of the defendants. Accordingly, Taylor is not a prevailing party within the meaning of § 1988 and has no claim for attorney fees and costs under that statute. On remand, the district court, therefore, must vacate the award of attorney fees and costs to Taylor.

Reversed and remanded with directions.