NOT DESIGNATED FOR PUBLICATION

No. 124,937

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of E.E.B.,
A Minor Child, By and Through Her Next Friend,

A.B.,
*Appellant*,

v.

E.K.,
*Appellee*.


MEMORANDUM OPINION


Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed November 23, 2022.
Affirmed.


*Todd A. Luckman*, of Stumbo Hanson, L.L.P., of Topeka, for appellant.


*Roger L. Unruh*, of McKone & Unruh, Chartered, of Junction City,  for appellee.


Before ATCHESON, P.J., BRUNS, J., and PATRICK D. MCANANY, S.J.


PER CURIAM:  In a paternity action brought by A.B., as the mother of E.E.B., a girl born in early 2016, the Riley County District Court found E.K. to be the child's father and entered a support order and a parenting plan that remain in place. A.B. and E.K.'s handling of their parental rights and obligations apparently has been marked by recurrent friction. At the center of this litigation, E.K. wanted E.E.B. vaccinated against COVID-19 in late 2021; A.B. did not. Called upon to settle the conflict, the district court relied on a dispute resolution mechanism the parents had previously accepted requiring them to resolve any disagreements over vaccinations, including for COVID-19, by deferring to

1

the recommendation of the child's regular pediatrician. The district court ordered E.E.B. be vaccinated, consistent with the parents' accepted process and the physician's recommendation. A.B. now challenges the ruling as a violation of her rights protected in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The argument rests on a constitutional overreach and, therefore, fails. We affirm the district court's order.

The district court stayed its order if A.B. timely appealed. She has, so we presume E.E.B. has not been vaccinated in conformity with the stay. Having affirmed the district court, we dissolve the stay. See *Yeasin v. University of Kansas*, 51 Kan. App. 2d 939, 955, 360 P.3d 423 (2015) (appellate court affirms district court's substantive ruling and dissolves district court's stay). The dissolution will be effective upon the conclusion of the appellate process, assuming our decision is not otherwise altered during the remainder of that process. See Supreme Court Rule 8.03(k)(1) (2022 Kan. S. Ct. R. at 61) (until mandate issues, Court of Appeals opinion may be cited as merely persuasive authority).

FACTUAL AND PROCEDURAL BACKGROUND

The district court found E.K. to be E.E.B.'s father in April 2017 and entered related support and parenting orders. Under Supreme Court Rule 909 (2022 Kan. S. Ct. R. at 628), the district court appointed a lawyer from Lawrence as a parenting coordinator in June 2021 to assist A.B. and E.K. in meeting their duties outlined in the parenting plan for E.E.B. In the appointment order, the district court determined a parenting coordinator to be appropriate, at least in part, because A.B. and E.K. "are consistently in conflict" over "issues related" to E.E.B., mirroring grounds in Rule 909. The order provided that written recommendations of the parenting coordinator would become binding and, thus, effectively directives of the district court unless either parent filed an objection within 14 days of the recommendation. The order identified the "health care management" of E.E.B. as one of the areas within the parenting coordinator's purview.

On December 13, 2021, the parenting coordinator made written recommendations on a variety of matters, including vaccinations for E.E.B. That particular recommendation states:

> "Neither parent will vaccinate the child without an agreement of the other parent or a Court order. *For all vaccinations, including COVID-19, the parties should follow the recommendations of the existing primary care provider.* If the parties disagree about what the primary care provider says, they should ask for that in writing and provide it to Parent Coordinator. Neither should get the children vaccinated without notification to the other with sufficient time to allow the other to seek Court intervention." (Emphasis added.)

The parenting coordinator emailed the recommendations to the lawyers for A.B. and E.K. that day and filed them with the district court the next day. Neither A.B. nor E.K. objected to the recommendation on vaccinations.

Two weeks after receiving the parenting coordinator's recommendations, E.K. filed a motion to have E.E.B. vaccinated against COVID-19, citing the position of the child's pediatrician favoring vaccination. On January 5, A.B. filed a response to the motion relying on Brandeis brief material on the potential side effects of COVID-19 vaccinations and the comparatively low incidence of serious illness among young children from COVID-19. See Black's Law Dictionary 232 (11th ed. 2019) (defining "Brandeis brief" as one "that makes use of social and economic studies"). A.B. did not dispute that E.E.B.'s pediatrician recommended the child be vaccinated; nor did she offer expert opinion from another medical doctor opposing vaccination. Essentially, A.B. provided her own risk-benefit assessment of vaccinating E.E.B. that differed from the pediatrician's.

On January 7, the district court held a brief hearing during which the lawyers made arguments supplementing their written submissions. Neither A.B. nor E.K. asked to submit additional evidence. The district court issued a short order three days later

granting E.K.'s motion for vaccination and staying the ruling if there were a timely appeal. The district court relied on the dispute resolution process the parenting coordinator crafted addressing vaccinations and the recommendation from E.E.B.'s pediatrician that the child be vaccinated against COVID-19. A.B. has duly appealed.

LEGAL ANALYSIS

On appeal, A.B. contends the district court violated her constitutionally protected due process rights. The argument seems to encompass both procedural and substantive due process protections without clearly delineating between them. We consider both. And as we have already stated, A.B. can point to no constitutional deprivation.

In general terms, substantive due process protects a limited number of fundamental rights not expressly enumerated in the United States Constitution because they are essential components of an ordered, civilized society and have been recognized as such in our national history and tradition. *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997); *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937); *Taylor v. Kansas Dept. of Health & Environment*, 49 Kan. App. 2d 233, 244, 305 P.3d 729 (2013). As A.B. points out, parents have a substantive due process right to raise and educate their children. *Washington*, 521 U.S. at 720; *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). As with other enumerated and unenumerated constitutional rights, the freedom to raise one's child is not absolute and may be subject to appropriate governmental limitations. See *Parham v. J.R.*, 442 U.S. 584, 603, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979); *Prince v. Massachusetts*, 321 U.S. 158, 166-67, 64 S. Ct. 438, 88 L. Ed. 645 (1944); *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1197-98 (10th Cir. 2010). The government retains a *parens patriae* interest in the welfare of children within its borders and may otherwise act for the public good in ways that curtail or override some parenting decisions. *Santosky*, 455 U.S. at 766; *Prince*, 321 U.S. at 166-

67. Those governmental intrusions include requiring potentially lifesaving medical treatment of a particular child and compulsory vaccination laws fostering the public health and welfare systemically. See *Jacobson v. Massachusetts*, 197 U.S. 11, 30, 39, 25 S. Ct. 358, 49 L. Ed. 643 (1905) (upholding constitutionality of mandatory vaccination statute including children unless certified to be medically unfit by licensed physician); *Goe v. Zucker*, 43 F.4th 11, 31-32 (2d Cir. 2022) (holding state statute and related regulations requiring certain vaccinations for child to attend public school and affording only narrow medical exemption "do not implicate a fundamental right"); *PJ ex rel. Jensen*, 603 F.3d at 1197-98 (permitting medical treatment of seriously ill child over parents' objection). In limited circumstances, the government may terminate the parent-child relationship to protect a child from continuing physical or emotional abuse or other exceptionally deleterious conditions. See K.S.A. 38-2269; *Santosky*, 455 U.S. at 747-48.

In making her argument to us, A.B. fails to acknowledge the jurisprudential nuance attached to the substantive due process right to parent one's child and, instead, presents the right as if it were virtually impregnable. And, in turn, she submits the district court's order deferring to the dispute resolution mechanism for E.E.B's vaccinations violates that right. The argument fails on several fronts.

First, of course, the right is not absolute. Second, statutes or other governmental directives requiring the vaccination of children in various circumstances do not violate the parents' substantive due process right. That authority supports the result here, at least by analogy. But the gulf between the district court's order and the vaccination of E.E.B. is even wider, accentuating the lack of any substantive due process violation. The outcome here was not the product of a governmental directive independently mandating that E.E.B. be vaccinated—state action that would intrude upon the parents' due process right, although not necessarily in a prohibited way. Rather, the district court simply used the reasonable method A.B. and E.K. had already accepted for themselves to resolve any disputes they might have about vaccinating E.E.B.

5

As such, the district court's order was qualitatively (and constitutionally) different from a direct government mandate to vaccinate a child. By deploying an existing dispute resolution mechanism the parents adopted, the district court neither intruded on nor impermissibly compromised their constitutional rights. A.B.'s claim to the contrary is mistaken. She and E.K. effectively accepted a vehicle to resolve disputes over vaccinating E.E.B. that ceded those decisions to the child's pediatrician. Even assuming the arrangement may have diminished their substantive due process rights in some way, A.B. and E.K. were free to make that choice. See *State v. James*, 309 Kan. 1280, Syl. ¶ 5, 443 P.3d 1063 (2019) (recognizing criminal defendants may waive their constitutional right); *Wertz v. Southern Cloud Unified School District*, 218 Kan. 25, 30, 542 P.2d 339 (1975) (recognizing party to civil dispute may waive constitutional due process rights).

To reiterate a key constitutional point: No government agency or actor required E.E.B. to be vaccinated against COVID-19 in the first instance. So, had A.B. and E.K. agreed to have E.E.B. vaccinated, that's what would have happened without any judicial involvement. Likewise, had they agreed E.E.B. should not be vaccinated, she would not have been—again, without any judicial involvement. But they couldn't agree, so E.K. brought the disagreement to the district court for resolution based on the court's continuing authority under the parenting plan entered in this paternity action. In turn, the district court resolved the matter by applying the reasonable dispute resolution device A.B. and E.K. had previously accepted.[*]

[*] Government action may violate substantive due process protections if it is wholly arbitrary in the sense of furthering no demonstrable policy objective while inflicting a deprivation of property or liberty or if it is so egregious as to shock the conscience by transgressing recognized limitations on brutal or indecent conduct. See *Rosales-Mireles v. United States*, 585 U.S. ___, 138 S. Ct. 1897, 1906, 201 L. Ed. 2d 376 (2018); *County of Sacramento v. Lewis*, 523 U.S. 833, 845-47, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); *Taylor*, 49 Kan. App. 2d at 244. A.B. has not fashioned this sort of substantive due process argument. We go down that path only far enough to say the record would appear to lend no support to such a constitutional claim.

And that flows into A.B.'s procedural due process arguments. First, A.B. contends she was denied sufficient procedural due process in the adoption of the dispute resolution mechanism deferring to the pediatrician's recommendation. Second, A.B. says the district court should have held a hearing addressing the competing medical considerations bearing on vaccinating E.E.B. against COVID-19. The two points overlap to some extent. Neither has merit.

Procedural due process requires that a person have an opportunity to be heard in a meaningful way and at a meaningful time to avert governmental action that would wrongfully compromise a legally recognized property right or liberty interest. See *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."); *Taylor*, 49 Kan. App. 2d 233, Syl. ¶ 4. Procedural due process is an especially elastic concept in that the protections required vary depending upon the importance of the specific property right or liberty interest at stake. *State v. Gonzalez*, 57 Kan. App. 2d 618, Syl. ¶ 2, 457 P.3d 938 (2019).

Here, A.B. had the opportunity to object to any written recommendation from the parenting coordinator, thereby triggering the district court's review of the particular recommendation. Absent an objection, the recommendation would go into effect as if it were an order of the district court. That process was clearly stated and, thus, applied to the recommendation on vaccinations. So, A.B. had to take an affirmative step, i.e., object, to get a hearing on the recommendation. Nonetheless, the procedure gave her a reasonable way to challenge whatever the parenting coordinator proposed. We see no constitutional due process violation with respect to the proposal for resolving disputes

7

over vaccinations. A.B. does not claim she failed to receive notice of the recommendation, and she plainly did not object to the dispute resolution method outlined in the recommendation. A.B. cannot now legitimately claim she lacked a meaningful opportunity to challenge the recommendation. She simply did not avail herself of the opportunity she had.

The district court, then, appropriately deployed the parenting coordinator's recommendation in the absence of any objection to the mechanism it outlined for resolving parental disagreements over vaccinating E.E.B. First, of course, A.B. and E.F. had accepted the recommendation. Second, the dispute resolution mechanism—deferring to E.E.B.'s pediatrician—was objectively reasonable under the circumstances. The pediatrician is a physician licensed to practice in Kansas and, thus, presumptively competent. Nobody has suggested otherwise. Moreover, A.B. and E.F. had been agreeable to him caring for E.E.B. to that point, thereby demonstrating some measure of confidence in his professional judgment overall. This is not a situation in which a physician unknown to the parents had been foisted on them to make a binding medical judgment about the treatment of their child.

Accordingly, based on the undisputed facts, we see no procedural due process violation in the district court relying on the dispute resolution mechanism the parties had accepted before their specific disagreement over the COVID-19 vaccination arose. Deferring to the pediatrician did not deprive A.B. of a liberty interest requiring additional procedural due process protections. The district court, therefore, had no constitutional obligation to entertain additional argument or evidence about the general risks or efficacy of the COVID-19 vaccine in addressing E.K.'s motion.

We affirm the district court's ruling that E.E.B. be vaccinated against COVID-19 consistent with her pediatrician's recommendation and find no constitutional error in the district court's reliance on the dispute resolution mechanism the parents had already

8

accepted deferring to those recommendations on vaccinations. The district court's stay is dissolved without further order upon the conclusion of this appeal.

Affirmed.