NOT DESIGNATED FOR PUBLICATION

No. 125,847

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BENJAMIN PEYTON ALLEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Oral argument held March 6, 2024. Opinion filed October 4, 2024. Affirmed.

*Michael L. Belancio*, of Watters, Wolf, Bub & Hansmann, LLC, of Kansas City, Missouri, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, P.J., ATCHESON and BRUNS, JJ.

PER CURIAM: After pleading no contest to and being found guilty of reduced charges of aggravated battery and indecent liberties with a child between 15 and 16 years old, Defendant Benjamin Peyton Allen presented expert testimony and extensive documentary evidence about autism and his diagnosis as autistic at his sentencing hearing. Based on that presentation, he asked the Leavenworth County District Court to place him on probation. The district court denied his request and imposed a 32-month prison sentence for each conviction to be served consecutively. Allen has appealed and

1

attempts to fashion a triad of constitutional challenges—equal protection, due process, and cruel and unusual punishment—to the sentencing on the grounds the district court did not fairly account for his autism and Kansas criminal law more generally does not. Allen has failed to establish a violation of his constitutional rights, so we affirm the sentences.

FACTUAL AND PROCEDURAL HISTORY

At the time of the crime in July 2019, Allen was 25 years old. He met J.C. on a social media platform. J.C. was 11 years old but represented she was a relatively young teenager. Allen, in turn, represented he was 18 years old. They agreed to "hook up" at a local park. During the meeting, Allen fondled J.C.'s breasts, attempted to have sexual intercourse with her, and digitally penetrated her.

J.C. and her grandmother immediately reported the incident to the local police. The State initially charged Allen with rape and aggravated indecent liberties with a child, both of which are Jessica's Law crimes given J.C.'s age and carry presumptive sentences of life in prison without parole eligibility for 25 years. K.S.A. 21-6627(a)(1)(B), (C). During the criminal prosecution, Allen was diagnosed as having autism spectrum disorder—a condition that affects how an individual perceives and reacts to others in social situations and may prompt behavioral responses considered odd or markedly inappropriate. Allen's lawyers shared this diagnosis with the prosecutor.

Ultimately, Allen's lawyers and the prosecutor reached an agreement calling for Allen to plead no contest to the amended charges of aggravated battery and indecent liberties with a child between 14 and 16 years old. Each of those crimes is a severity level 5 person felony, and for defendants with little or no criminal history, such as Allen, they are considered border box offenses with a presumption for imprisonment. In July 2022, the district court accepted Allen's no contest pleas and adjudged him guilty of the amended charges.

The record does not outline the considerations that went into the plea agreement, and we decline to speculate on them. The amended charges may be characterized as a legal fiction, especially considering J.C.'s age. But the criminal justice process tolerates that sort of creativity in negotiating and implementing agreements to dispose of cases through pleas. See *State v. Gray*, No. 123,730, 2022 WL 879744, at *5 (Kan. App. 2022) (unpublished opinion).

At the sentencing hearing about two months later, Allen's lawyers called a psychologist specializing in autism spectrum disorder to testify about the condition and the ways it affected Allen. They also offered and the district court admitted an array of scholarly publications about autism. The State offered no evidence as a direct counterpoint to Allen's presentation. Based on that evidence, Allen's lawyers requested the district court place Allen on probation—a result contrary to the border box presumption. The district court imposed a 32-month prison sentence on each conviction, reflecting the standard presumptive punishment, to be followed by postrelease supervision for life on the indecent liberties with a child offense. The district court denied Allen's request for probation and ordered him to serve the prison sentences consecutively for a controlling 64-month term. Allen has appealed.

LEGAL ANALYSIS

At the outset, we acknowledge the grave disappointment Allen's lawyers have with the district court's decision and their view that the district court simply failed to appreciate the nature of their client's autism and how it affected his conduct with J.C. That comes through in their brief and was apparent during oral argument. But under Kansas law, they face a near insurmountable barrier to turning their adamant disagreement with the district court's sentencing of Allen into a viable issue on appeal.

The governing statute precludes an appeal of a sentence falling within the guidelines or resulting from a plea agreement. K.S.A. 21-6820(c). Allen's sentences were both. The district court's decision to order them served consecutively doesn't lift that legal bar. *State v. Jacobs*, 293 Kan. 465, 466, 263 P.3d 790 (2011); *State v. McKoy*, No. 124,503, 2022 WL 2288711, at *1 (Kan. App. 2022) (unpublished opinion). But the Kansas Supreme Court has recognized that a defendant may challenge a presumptive guidelines sentence if the governing statutory provisions operate in a way that creates a systemic constitutional defect. *State v. Albano*, 313 Kan. 638, 640, 487 P.3d 750 (2021); *State v. Huerta*, 291 Kan. 831, 840, 247 P.3d 1043 (2011).

Allen has attempted to fit his case within that narrow escape route with arguments that the Kansas Criminal Code fails to give sufficient consideration to autism and how the condition may affect a defendant's culpability for their conduct, particularly as a mitigating factor in assessing punishment. So he frames an argument based on the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the prohibition of cruel and unusual punishment in the Eighth Amendment to the United States Constitution as applied through the Fourteenth Amendment. In turn, Allen says the district court similarly declined to fully and fairly consider his autism in refusing his request for probation.

Before turning to the specific constitutional claims, we point out that under K.S.A. 21-6815(c)(1)(C) a district court may impose a shorter sentence than the presumptive prison term or place a defendant on probation despite a presumption for incarceration if "[t]he offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed." Likewise, here, the district court admitted and considered the expert testimony and documentary evidence Allen presented during the sentencing hearing bearing on his autism and the condition generally. Given the specific circumstances, the district court found the evidence insufficiently persuasive to warrant probation for convictions presumptively calling for incarceration. So the

4

district court listened to what the lawyers had to say but was unmoved. The lawyers face a daunting task on appeal in wringing a constitutional violation from that adverse outcome, and perhaps as a result, their claims lack both clarity and heft.

*Equal Protection Claim*

The Equal Protection Clause requires that state and local governments treat similarly situated persons the same absent some justification for a disparity. See *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) ("Our equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'") (quoting *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S. Ct. 1101, 6 L. Ed. 2d 393 [1961]); *Reed v. Reed*, 404 U.S. 71, 75-76, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971) ("The Equal Protection Clause . . . den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute."); *Jurado v. Popejoy Const. Co.*, 253 Kan. 116, 123, 853 P.2d 669 (1993) ("[E]qual protection requires . . . that legislative classifications be reasonable, not arbitrary, and that they be justified by legitimate legislative objectives."). The Kansas Constitution Bill of Rights section 2 affords a comparable protection. See *Rivera v. Schwab*, 315 Kan. 877, 894, 512 P.3d 168 (2022). In considering equal protection challenges, courts examine governmental schemes with differing degrees of deference depending on how those schemes create and then treat groups or classes of persons receiving benefits or incurring detriments. See *Fowler v. Stitt*, 104 F.4th 770, 794 (10th Cir. 2024) ("The appropriate level of scrutiny varies depending on the classification at issue."); *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) ("[W]hat sort of [equal protection] review a court must apply, depends on the nature of the class of individuals the state or local government treats differently or the rights at issue.").

If the governmental classification burdens a fundamental right or divides based upon suspect class characteristics, such as race or religion, the courts must apply strict scrutiny and will uphold the classification only if it furthers compelling governmental interests and is narrowly tailored to advance those interests. *Plyler v. Doe*, 457 U.S. 202, 216-17, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982); *Zablocki v. Redhail*, 434 U.S. 374, 388, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978); *Fowler*, 104 F.4th at 794; *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1254 (10th Cir. 2023). The courts have applied "intermediate scrutiny"—a less demanding review than strict scrutiny—to equal protection challenges based on a few recognized class characteristics, including sex and legitimacy, sometimes termed "quasi-suspect." See *Fowler*, 104 F.4th at 794 (sex); *Pierre v. Holder*, 738 F.3d 39, 50 (2d Cir. 2013) (sex and legitimacy). When a classification impinges on neither a fundamental right nor a protected class, the courts commonly apply rational basis review in deciding an equal protection challenge. *Vacco v. Quill*, 521 U.S. 793, 799, 117 S. Ct. 2293, 138 L. Ed. 2d 834 (1997); *Fowler*, 104 F.4th at 794; *Kwong v. Bloomberg*, 723 F.3d 160, 172 (2d Cir. 2013).

Here, Allen does not precisely define a class he contends the Kansas sentencing scheme disadvantages. We presume the class would be those defendants who have been clinically shown to have autism or autism spectrum disorder. Because autism affects people in widely varying ways and degrees, we assume without deciding that Allen has outlined an identifiable class of sufficient commonality to be considered for equal protection purposes. But Allen has not shown that the class has been or should be treated as suspect or quasi-suspect, requiring heightened judicial scrutiny. The law appears otherwise. See *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 735, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003) ("age- or disability-based distinctions" subject to rational basis review for equal protection purposes); *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 366-68, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001) (mental or physical disability not characteristic requiring heightened review for equal protection purposes); *Ostrowski v. Lake County*, 33 F.4th 960, 966 (7th Cir. 2022).

6

Moreover, Allen has not really identified an impermissible governmental classification based on his autism. In other words, he has not shown how Kansas law imposes an additional burden on him or denies him a benefit because of his autism. Rather, he argues the sentencing statutes ought to explicitly recognize autism and the failure to do so creates an equal protection violation. The argument seems miscast as a constitutional violation. What Allen wants when he states the issue that way is specific recognition of autism in the criminal justice process and some accommodation for defendants with autism in the governing statutes. That's a public policy consideration falling within the Legislature's realm—not a judicial determination, constitutional or otherwise. See *State v. Spencer Gifts, LLC*, 304 Kan. 755, Syl. ¶ 4, 374 P.3d 680 (2016) ("Questions of public policy are for legislative and not judicial determination, and where the legislature declares a policy, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts."); *State v. Appelhanz*, No. 119,178, 2019 WL 1213232, at *3 (Kan. App. 2019) ("[P]ublic policy determinations in defining and punishing criminal conduct lie with the Legislature rather than the courts.").

As a forensic tool, we apply the rational basis test to Allen's claim. See *Chapman v. United States*, 500 U.S. 453, 465, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991) (equal protection challenge to sentencing statute reviewed for rational basis); *State v. Perez*, 269 Kan. 340, 342, 11 P.3d 52 (2000); *United States v. Titley*, 770 F.3d 1357, 1359 & n.3 (10th Cir. 2014). A governmental classification survives rational basis review if "'a plausible policy reason'" supports the scheme and it is not so removed from that reason as to result in an "'arbitrary or irrational'" distinction. *Fitzgerald v. Racing Assn. of Central Iowa*, 539 U.S. 103, 107, 123 S. Ct. 2156, 156 L. Ed. 2d 97 (2003) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11-12, 112 S. Ct. 2326, 120 L. Ed. 2d 1 [1992]). A statute is presumed constitutional for purposes of rational basis review, and the party saying otherwise bears the burden of proving an equal protection violation. *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993); *Mudd v. Neosho Memorial Regional Medical*

7

*Center*, 275 Kan. 187, 198, 62 P.3d 236 (2003); *State v. Dixon*, 60 Kan. App. 2d 100, 135, 492 P.3d 455 (2021).

A statute or other regulation may be upheld for any justifiable purpose; the purpose need not be the one that prompted its adoption. See *McDonald v. Board of Election*, 394 U.S. 802, 809, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969); *Estate of Kunze v. C.I.R.*, 233 F.3d 948, 954 (7th Cir. 2000). And the fit between the statute and the purpose may be inexact, meaning the legislation need not be particularly well-tailored to accomplishing the governmental objective. *Heller*, 509 U.S. at 320-21 ("an imperfect fit between means and ends" acceptable under rational basis review); *Peden v. State*, 261 Kan. 239, 258-59, 930 P.2d 1 (1996). In sum, courts will tolerate some inequity under rational basis review if a statutory scheme otherwise advances legitimate governmental purposes or identifiable public policies.

We return to K.S.A. 21-6815(c)(1)(C) and its recognition that a defendant's "physical or mental impairment" may be a mitigating factor permitting a district court to deviate from a presumptive guidelines sentence. In our view, the statutory language encompasses autism or a diagnosis of autism spectrum disorder as potential mitigators, even though the phrase neither expressly mentions them nor is confined to them. Nothing in the statute precludes a district court from considering autism as a mitigating factor. Whether a particular defendant ought to receive a mitigated punishment would depend on the charged crime and the surrounding factual circumstances coupled with specific effects of the defendant's autism on their criminal culpability. Accordingly, K.S.A. 21-6815(c)(1)(C) bears a rational relationship to permitting defendants with autism to argue their condition in mitigation of punishment. Indeed, Allen did exactly that in this case. We need not consider what is (for now) a distinctly hypothetical scenario in which a district court categorically refuses to consider autism, however it may be manifested, as a possible mitigator. The refusal would likely contravene the statute and could amount to an equal protection or due process violation.

Allen tries to avert the conclusion we reach by emphasizing that autism is not a mental illness but a "different system of thought" and, thus, a matter of "'[n]eurodiversity." He seems to suggest that autism, therefore, falls outside the scope of K.S.A. 21-6815(c)(1)(C). In his brief, Allen nonetheless also characterizes autism spectrum disorder as a "developmental disability." The statutory phrase—"physical or mental impairment"—seems sufficiently pliable to cover autism and autism spectrum disorder. We fail to see a great deal of daylight between a "mental impairment" and a "developmental disability" when it comes to sentencing criminal defendants—they plainly are overlapping characteristics that may bear on culpability.

More to the point, Allen's argument for mitigation rests on the idea that because of his autism he processed his interactions with J.C. in an atypical way, misperceived the circumstances, and did not understand what would be considered appropriate conduct in those circumstances. So he submits that his behavior should be treated as less blameworthy legally since it was at least to some degree the product of his condition. If his autism did not curtail his ability to perceive and respond to his environment in ways that fit within social norms, then it could not be a mitigating factor. Whether autism, as a mitigator, is characterized as a "mental impairment" or a "developmental disability" seems to be a matter of semantics.

Even if autism and autism spectrum disorder do not come within the scope of K.S.A. 21-6815(c)(1)(C)—a proposition we reject—a district court could consider them in a given case as a nonstatutory basis for mitigation. See *State v. Morley*, 312 Kan.702, 706, 479 P.3d 928 (2021) (district court may consider mitigating factors in addition to those listed in statute if "consistent with" principles underlying sentencing guidelines). Again, a district court likely would err if it concluded autism could never be a nonstatutory mitigator regardless of the case-specific circumstances. But those specific circumstances could weigh sufficiently against mitigation to deny a request in a given case. 312 Kan. at 711.

9

In short, Allen has failed to establish the Kansas sentencing statutes somehow impermissibly limit or preclude consideration of autism and autism spectrum disorder as a factor potentially mitigating the punishment of criminal defendants. In turn, he has not articulated an equal protection violation.

*Due Process Violation*

Allen asserts the sentencing scheme deprived him of due process rights as someone clinically found to be autistic. He has generically stated the proposition and invokes both substantive and procedural due process protections. We address both.

Procedural due process precludes the government from depriving a person of a property right or a liberty interest without affording them the opportunity to be heard in a meaningful way and at a meaningful time to avert a wrongful deprivation of that right or interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."); *Taylor v. Kansas Dept. of Health & Environment*, 49 Kan. App. 2d 233, Syl. ¶ 4, 305 P.3d 729 (2013). As we have recognized: "Constitutional due process is an especially elastic concept in that the protections required vary depending upon the importance of the specific property right or liberty interest at stake." *State v. Gonzalez*, 57 Kan. App. 2d 618, 623, 457 P.3d 938 (2019).

As a criminal defendant, Allen is entitled to rigorous procedural due process protections of his liberty. 57 Kan. App. 2d at 623. But we see no violation of his constitutional right. And what we discussed in analyzing his equal protection claim

10

applies to the due process claim as well. The sentencing statutes, particularly K.S.A. 21-6815(c)(1)(C), afforded Allen and would similarly afford other defendants with autism the opportunity to present evidence to the district court about their condition to mitigate their sentences. The opportunity satisfies the requirements for procedural due process. The constitutional right to be heard does not, however, guarantee a successful outcome, i.e., a particular substantive result. Allen has not established a procedural due process violation inherent in the sentencing statutes or in the hearing he received. The latter likely would present a claim we could not consider in this direct appeal under *Huerta* because Allen received a guidelines sentence that was the product of a plea agreement. 291 Kan. at 840. Any remedy would lie in a habeas corpus motion under K.S.A. 60-1507. 291 Kan. at 841.

Substantive due process protects a narrow range of fundamental liberty interests against governmental encroachment, even though they are not expressly enumerated in the United States Constitution. *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997); *Katz v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 877, 896, 256 P.3d 876 (2011). Those liberty interests must be "deeply rooted" in the nation's history and experience. *Glucksburg*, 521 U.S. at 720-21. Justice Benjamin Cardozo described substantive due process rights as part of "the very essence of a scheme of ordered liberty" and inseparably entwined with "a 'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937). Among recognized substantive due process liberty interests are the right to bear and raise children, the right to marry, and various other rights closely allied with those explicitly guaranteed in the Bill of Rights. See *Glucksberg*, 521 U.S. at 720.

In addition, especially egregious or arbitrary actions of government officials may violate substantive due process protections of the Fourteenth Amendment if they further no legitimate governmental interest or their character "'shocks the conscience.'" *County of*

*Sacramento v. Lewis*, 523 U.S. 833, 845-47, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); *Katz*, 45 Kan. App. 2d at 896. In *Lewis*, the Court appeared to tie the arbitrary or conscience shocking standard for a constitutional deprivation to "executive action." 523 U.S. at 847-48 & n.8. The Tenth Circuit Court of Appeals has declined to apply it to legislative enactments, i.e., statutes. See *Browder v. City of Albuquerque*, 787 F.3d 1076, 1079 n.1 (10th Cir. 2015); *Dias v. City and County of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009). The point seems to have caused some disagreement. See *Galdikas v. Fagan*, 342 F.3d 684, 690 n.3 (7th Cir. 2003) (noting ambiguity and uncertainty as to scope of standard). Other circuit courts have considered the conscience-shocking character of legislative action. See, e.g., *B & G Const. Co., Inc. v. Director, Office of Workers' Compensation Programs*, 662 F.3d 233, 255 (3d Cir. 2011); *Obsession Sports Bar & Grill, Inc. v. City of Rochester*, 706 Fed. Appx. 53 (2d Cir. 2017) (unpublished opinion).

We see no substantive due process right that was compromised here. The courts recognize citizens have a fundamental right shielding them from an arbitrary or otherwise unreasonable exercise of governmental authority to deprive them of their liberty. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government."); *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) (recognizing "[f]reedom from bodily restraint" to be at "the core of the liberty" protected against impermissible government action); 504 U.S. at 90 (Kennedy, J., dissenting) ("As incarceration of persons is the most common and one of the most feared instruments of state oppression and state indifference, we ought to acknowledge at the outset that freedom from this restraint is essential to the basic definition of liberty in the Fifth and Fourteenth Amendments of the Constitution."). The principal shield for that fundamental right lies in a judicial process that affords accused citizens adequate procedural protections, such as jury trials, sentencing hearings, and legal representation at all critical states of a prosecution. Allen has not shown a systemic deprivation of either procedural or substantive due process in that respect.

In turn, we do not see some arbitrary or otherwise conscious-shocking deficiency in the Kansas sentencing scheme as it pertains to defendants with autism or autism spectrum disorder. As Allen's prosecution illustrates, district courts can consider autism as a mitigating factor in determining punishment. The statutes need not expressly refer to autism to accomplish that purpose—just as they do not mention other mitigators, such as family support or youthful immaturity. See *State v. Lopez*, 271 Kan. 119, 140-41, 22 P.3d 1040 (2001) (youth and immaturity of judgment in tandem properly considered mitigating factor in considering departure sentence); *State v. Murphy*, 270 Kan. 804, 808-09, 19 P.3d 80 (2001) (family support properly considered as mitigating factor favoring departure sentence).

Again, in short, Allen has crafted neither a substantive nor a procedural due process violation.

*Cruel and Unusual Punishment*

Allen presents a diffuse challenge to the sentencing of defendants with autism as cruel and unusual punishment violating the Eighth Amendment. The imprecise argument fails to outline a colorable constitutional deficiency.

A punishment that is grossly disproportionate to the crime for which it is imposed may violate the Eighth Amendment. See *Montgomery v. Louisiana*, 577 U.S. 190, 206, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016); *Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983); *State v. Gulley*, 315 Kan. 86, 99, 505 P.3d 354 (2022). But the lack of symmetry must be extreme to create a constitutional violation. *Graham v. Florida*, 560 U.S. 48, 59-60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). We do not understand Allen to be arguing that a sentence of 32 months for either of his crimes of conviction to be constitutionally disproportionate because of its length. The argument would fail. See *State v. McCloud*, 257 Kan. 1, 6, 891 P.2d 324 (1995) (96-year

13

controlling sentence for 12 convictions of aggravated robbery "is not so cruel or unusual either in its method or its length that it shocks the conscience and offends fundamental notions of human dignity so as to be constitutionally impermissible" under Kansas Constitution Bill of Rights, section 9); *Steele v. State*, No. 125,240, 2023 WL 2344619, at *4 (Kan. App. 2023) (unpublished opinion) (controlling prison sentence of 615 months imposed on 17 year old referred as adult offender for sex crimes did not violate Eighth Amendment).

The United States Supreme Court has also held that severe punishments may be constitutionally impermissible if imposed on certain classes of criminal defendants. See *Roper v. Simmons*, 543 U.S. 551, 575, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (imposition of death penalty on juveniles violates Eighth Amendment); *Atkins v. Virginia*, 536 U.S. 304, 321, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002) (imposition of death penalty on "mentally retarded criminals" violates Eighth Amendment). Apart from death penalty cases, the Court has recognized that requiring a juvenile to serve a mandatory sentence of prison in life without parole even for murder violates the Eighth Amendment. *Jones v. Mississippi*, 593 U.S. 98, 103, 141 S. Ct. 1307, 209 L. Ed. 2d 390 (2021). The constitutional defect rests on the confluence of the juvenile defendant's age (and concomitant immaturity) and the exceptional harshness of the punishment (only a death sentence would be more severe). Conversely, a trial court's authority to impose a discretionary sentence of life without parole on a juvenile offender, at least for murder, does not offend the Eighth Amendment. 593 U.S. at 100. Nor does the imposition of a sentence requiring a juvenile to serve an exceptionally long term of years before being considered for release. *Gulley*, 315 Kan. at 103; *State v. Redmon*, No. 123,811, 2022 WL 5267694, at *3-4 (Kan. App. 2022) (unpublished opinion) (Atcheson, J., concurring).

We fail to see how a viable Eighth Amendment claim benefiting Allen could be crafted from those principles. Autism and autism spectrum disorder do not seem to be so monolithic in their appearance and effect that they can be equated to the demonstrable

14

immaturity of youth. See *Miller v. Alabama*, 567 U.S. 460, 471-72, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). And in contrast to that immaturity, they are unlikely to change with the passage of time. Moreover, for Allen to receive some relief, he essentially must argue that incarceration for any appreciable period would inflict an unconstitutional punishment on the autistic. The argument is untenable, although he seems to head in that direction.

Allen submits that inmates with autism tend to fare poorly in prison because they do not perceive and respond to rules, informal practices, and social cues in the same way other inmates do. And he suggests the Kansas prison system does not take sufficient account of the difficulties the autistic face in that sort of challenging and potentially dangerous environment. Allen's evidence about Kansas prisons was spotty and more conclusory than substantive. Those considerations do not add up to an Eighth Amendment prohibition on incarcerating individuals with autism who have been convicted of serious crimes. If the particular conditions of Allen's confinement are constitutionally impermissible, he has remedies in habeas corpus under K.S.A. 60-1501 or through a federal civil rights action under 42 U.S.C. § 1983.

*Conclusion*

We have carefully assessed Allen's constitutional claims and find them insufficient to support his argument that the district court violated his rights in denying his request for probation. He has not established a systemic deficiency depriving criminal defendants with autism of fair consideration of their circumstances in mitigation of the punishment they may receive.

Affirmed.